Sanger v. Rice.

JANE SANGER v. DAVID R. RICE *et al.*

1. TAX DEED, *When Liberally Construed and Upheld.* Ordinarily, a tax deed should be strictly construed; but where a tax deed has been of record for more than five years, and the claimant under it has been in the actual possession of the property conveyed by it during all that time, making improvements thereon, and no person claiming to have any interest in the property at any time during the period that elapsed from the time when the taxes were first levied upon the property till after more than five years had elapsed from the time of the recording of the tax deed, has ever made any claim to the property as against the claimant under the tax deed, but only a person claiming under a quitclaim deed, executed after more than five years had elapsed from the date of the recording of the tax deed, and for the expressed consideration of only $1, has ever attempted to disturb the rights of the party claiming under the tax deed, and where such tax deed, if it were so construed as to make the facts therein stated correspond precisely with the actual facts, would necessarily be held to be valid, such tax deed should be liberally construed for the purpose of upholding and enforcing it.

2. CERTIFICATE — *Assignment — Part of Taxes.* And *further held,* that the tax deed in question does not show affirmatively and upon its face that the tax-sale certificate was assigned for only a portion of the taxes remaining due and unpaid at the date of the assignment.

3. ——— *Sufficient Assignment.* Where a tax deed executed in 1881, upon a tax sale made in 1874, for taxes levied in 1873, recites that the assignment of the tax-sale certificate was made by the county, and does not specifically say that it was made by the county clerk, *held,* sufficient.

4. MACADAM TAX — *Sale — Tax Deed.* Although a "macadam tax" levied and assessed by a city of the second class is only a "special assessment for improvements," yet it is such a tax that when certified by the city clerk to the county clerk, and placed on the county tax-roll, the property against which it is assessed may be sold for such tax, and a tax deed may be executed upon such sale.

5. ——— And such a tax deed, if sufficient in form, will be *prima facie* valid.

*Error from Bourbon District Court.*

THIS was an action in the nature of ejectment, brought in the district court of Bourbon county on June 3, 1887, by *David R. Rice* against I. S. Sanger and others, to recover the north half of lot number 12 in block number 102, in Fort

Scott, Kansas. Afterward Oscar Rice was substituted as plaintiff in the place of David R. Rice. At the December term, 1887, the case was tried before the court without a jury, and the court made special findings of fact and conclusions of law, and upon such findings and conclusions rendered judgment in favor of the plaintiff and against the defendant for the property in controversy; but on the other side rendered judgment that the defendant Sanger was entitled to receive from the plaintiff, for taxes paid and improvements made by Sanger, the sum of $871.78. It is not necessary to give a copy of the findings of fact or conclusions of law, but as the principal question involved in this case is whether a certain tax deed is valid or not upon its face, it will be proper to give a copy of such tax deed. Such tax deed, omitting the acknowledgment, reads as follows:

"*Know all men by these presents*, That whereas, the following-described real property, viz., north half of lot No. twelve (12), in block No. one hundred and two (102), in the city of Fort Scott, situated in the county of Bourbon and state of Kansas, was subject to taxation for the year A. D. 1873; and

" Whereas, the taxes assessed upon said real property for the year aforesaid remained due and unpaid at the date of the sale hereinafter mentioned; and

" Whereas, the treasurer of said county did, on the 21st day of May, 1874, by virtue of the authority in him vested by law, at the sale begun and publicly held on the first Tuesday of May, A. D. 1874, expose to public sale, at the county seat of said county, in substantial conformity with all the requisitions of the statute in such cases made and provided, the real property above described, for the payment of taxes, interest and costs then due and remaining unpaid upon said property; and

" Whereas, at the time and place aforesaid there being no bidders for said property, said property could not be sold for the amount of taxes and charges thereon, said north half-lot 12, block 102, in the city of Fort Scott, Kansas, was bid off by the county treasurer for the county of Bourbon, for the sum of forty-one dollars and thirty-four cents, being the whole amount of taxes, interest and costs then due and remaining unpaid on said property; and

"Whereas, the said county of Bourbon did, on the 15th day of September, A. D. 1881, duly assign the certificate of the sale of the property, as aforesaid, and all its right, title and interest to said property, to John F. Cottrell, of the county of Bourbon and state of Kansas, for the sum of one hundred and ninety-two and 50-100 dollars. in full of taxes, costs, and interest on said property for the year 1873, for macadam tax only; and

"Whereas, over three years have elapsed since the date of said sale, and the said property has not been redeemed therefrom as provided by law:

"Now, therefore, I, L. B. Welch, the county clerk of the county aforesaid, for and in consideration of the said sum of one hundred and ninety-two dollars and fifty-nine cents, taxes, costs and interest due on said lands for the years aforesaid, to the treasurer paid as aforesaid, and by virtue of the statute in such cases made and provided, have granted, bargained and sold, and by these presents do grant, bargain and sell unto the said John F. Cottrell, his heirs and assigns, the real property last hereinbefore described; to have and to hold unto him, the said John F. Cottrell, his heirs and assigns forever; subject, however, to all the right of redemption provided by law.

"In witness whereof, I, L. B. Welch, the county clerk as aforesaid, have hereunto subscribed my name and affixed the official seal of said county, on the 16th day of September, A. D. 1881.          [Seal.]          L. B. WELCH, *County Clerk.*"

The defendant Sanger, as plaintiff in error, brought the case to this court, making David R. Rice and Oscar Rice defendants in error.    Since the case was brought to this court Sanger died, and the action has been revived in the name of Jane Sanger, individually, and as administratrix.

*J. D. McCleverty*, for plaintiff in error.

*Ware, Biddle & Cory*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The substantial question involved in this case is, who owns the north half of lot number 12 in block number 102, in Fort Scott? The title of the defendants in error, plaintiffs below, is as follows: It is admitted that Wil-

liam Shaeffer, prior to his death, and by a chain of title from the government down to himself, owned the property in controversy. After his death, and on April 23, 1887, his heirs, by a quitclaim deed for the expressed consideration of $1, conveyed the property to David R. Rice, and on December 26, 1887, David R. Rice and wife, by a quitclaim deed, for the expressed consideration of $1, conveyed the property to Oscar Rice. The title of the plaintiff in error, defendant below, is founded upon a tax deed executed by the county clerk of Bourbon county to John F. Cottrell on September 16, 1881, for taxes of 1873, and recorded on September 19, 1881, and a quitclaim deed executed by Cottrell and wife to I. S. Sanger, on July 10, 1882, and the actual possession of the property by Sanger and his grantor from the date of the tax deed to the present time, and paying all the taxes and making improvements thereon. As the tax deed had been of record for more than five years before this action was commenced, and as the parties holding under the same were in the actual possession of the property during all that time, and as except for the tax deed the plaintiff below, Rice, would hold the legal title to the property, it is admitted by both parties that the only question involved in the case with regard to the title is, whether the tax deed is void or valid upon its face.

The facts of the case concerning the taxes and the tax proceedings, as shown by the evidence outside of the tax deed, and stated very briefly, are substantially as follows: In the year 1873 the property in controversy was taxed for various purposes, and these taxes were placed upon the tax-rolls of Bourbon county. An amount was also assessed against the property by the city of Fort Scott for macadamizing the street immediately in front of such property, which amount was also placed upon the tax-rolls of the county for that year, and was designated and known as a "macadam tax." All the taxes except this macadam tax were paid, and this macadam tax was not paid. On May 21, 1874, the property was offered for sale, for this macadam tax, and there being no bidders it was bid off by the county treasurer for the county of

Bourbon. On September 15, 1881, John F. Cottrell paid into the county treasury the sum of $192.59, being the amount that would be required at that time to redeem the property from the taxes, and received a certificate therefor from the county treasurer, which certificate and all the interest of Bourbon county in and to the property in controversy, were, for the consideration above named, assigned to Cottrell by the then county clerk of Bourbon county, and on the next day the tax deed was executed by the county clerk to Cottrell. These facts are certainly sufficient, if the tax deed properly states them, to give the tax-deed holder a good title. It is claimed, however, on the part of Rice, that the tax deed does not state the real facts, and that the facts which it does not state render it void upon its face, and this for the following reasons:

*First:* It is claimed that the tax deed shows that prior to the time of the tax sale other taxes besides the macadam tax had been assessed and levied upon the property in controversy for the year 1873; that all these taxes were still due and unpaid at the date of the sale; that the property was sold for all such taxes; that they all remained due against the land up to the assignment of the tax-sale certificate, and that the tax-sale certificate was assigned, not for all of them, but for the macadam tax only.

*Second:* It is further claimed, that the assignment of the tax-sale certificate was not made by the county clerk.

*Third:* It is also claimed, that a macadam tax is no tax at all, but only a "special assessment for improvements," and that there is no law authorizing a tax sale or a tax deed for special assessments.

*Fourth:* It is also claimed that, although the macadam tax is a special *assessment* for improvements and nothing else, yet that under the law there can be no *assessor* in such a case; and that, as a tax deed is *prima facie* evidence only "from the valuation of the land by the *assessor*, inclusive, up to the execution of the deed," (Tax Law, §138,) a tax deed founded only upon a special assessment for improvements cannot be

evidence of anything; that, as there can be no *assessor* in such a case, there can be no starting-point for the tax deed to begin to be evidence of anything.

Ordinarily, tax deeds should be strictly construed, but under the circumstances of this case we think the present tax deed ought to be liberally construed, for the purpose of upholding and enforcing it:

1. Tax deed, when liberally construed and upheld.

*First:* Public officers are always presumed to do their duty.

*Second:* Section 139 of the tax law reads as follows:

"SEC. 139. No irregularity in the assessment roll nor omission from the same, nor mere irregularities of any kind in any of the proceedings, shall invalidate any such proceeding or the title conveyed by the tax deed; nor shall any failure of any officer or officers to perform the duties assigned him or them, upon the day specified, work an invalidation of any such proceedings or of said deed."

*Third:* Section 141 of the tax law reads as follows:

"SEC. 141. Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes, except in cases where the taxes have been paid or the land redeemed as provided by law, shall be commenced within five years from the time of recording the tax deed, and not thereafter."

*Fourth:* The present tax deed was recorded more than five years before this action was commenced, and during all that time the claimants under it had the actual possession of the property conveyed, making improvements on it.

*Fifth:* And no person claiming to have any interest in the property at any time during the period that elapsed from the time when the taxes were first levied upon it in 1873, till after more than five years had elapsed from the recording of the tax deed, has ever made any claim to the property as against the claimants under the tax deed.

*Sixth:* But only persons holding under a quitclaim deed executed after more than five years had elapsed from the date

of the recording of the tax deed, and for the expressed consideration of only one dollar, have ever attempted to disturb the rights of the parties claiming under the tax deed.

*Seventh:* If the tax deed should be construed so as to make the facts therein stated correspond precisely and exactly with the real facts of the case, then the tax deed would necessarily be held to be valid.

It is claimed by counsel for Rice, that the tax deed shows upon its face that other taxes than the macadam tax were assessed and levied upon the property for the year 1873, and that at the time of the tax sale all these taxes so assessed or levied were still due and unpaid, and remained so down to the assignment of the tax-sale certificate, when such certificate was assigned to Cottrell for the macadam tax only. Now really there is nothing in the tax deed that shows that taxes were levied or assessed upon the property, except the macadam tax. Were there any others? It can hardly be said that the tax deed shows it. And it is possible for all the ordinary taxes to be omitted from the tax-rolls of the county and a special assessment for improvements like a macadam tax to be put on the tax-rolls, for the ordinary taxes in a city of the second class are founded upon an assessment made by the regular city assessor, and placed originally upon the tax-rolls by the county clerk, while special assessments like macadam taxes are founded upon an assessment made by three appraisers appointed by the mayor and council, and are certified by the city clerk to the county clerk, and then put on the tax-rolls. Besides, it is evident from the entire tax deed, including all its parts, that the county clerk did not mean to say that there was any tax due upon the property at the time of the tax sale other than the macadam tax, and such was not the fact. The second "whereas" is the only portion of the tax deed from which it might be inferred that other taxes than the macadam tax were still due against the property and unpaid at the date of the tax sale, and this is scarcely any evidence; for the object of that "whereas" is not to show what taxes are still due and unpaid, or to describe any of the

taxes, but only to show that the property sold was subject to
sale for delinquent tax; and one tax for this purpose is as good
as twenty. Of course the "whereas" should be broad enough
in its statement to include all the delinquent taxes, but where
it is too broad, as is claimed in this case, no particular harm
can be done. But suppose there were other taxes than the
macadam tax still due against the property at the time of the
tax sale: may not a portion of them have been paid after the
tax sale and before the assignment of the tax-sale certificate,
leaving only the macadam tax still due against the property
at the time the tax-sale certificate was assigned?
We do not think that the tax deed in this respect
shows upon its face and affirmatively what counsel
for Rice claims that it does; and certainly at this late day it
should not be held to be void for any such reason.

2. Certificate—
assignment—
part of taxes.

We also think that the tax deed sufficiently shows that the
assignment of the tax-sale certificate was made by the county
clerk of Bourbon county; for the tax deed recites that it was
duly assigned by Bourbon county, and it could not have been
duly assigned by Bourbon county unless it was assigned by the
county clerk. The statutes require that when property is
offered for sale for delinquent taxes, and when there are no
bidders, the property shall be bid off by the county treasurer
*for the county*, and when any person shall desire to purchase
the county's interest in the property and shall pay the amount
required therefor, the treasurer shall issue to such person a
tax-sale certificate, and the county clerk shall then assign the
certificate to the purchaser, and such certificate and assign-
ment "shall vest *all the interest of the county* in or to such land
or town lot in such person." (Tax Law of 1868, § 91; Tax
Law of 1876, § 117.) Prior to the tax law of 1876 the
statute did not require that the tax deed should state that the
county clerk had assigned the tax-sale certificate, but it left
the county clerk in executing the tax deed to state the fact of
assignment in any appropriate language which he might
choose to use; and § 155 of the tax law of 1876 reads as fol-
lows:

"SEC. 155. All matters relative to the sale and conveyance

of lands for taxes under any prior statute shall be fully completed according to the laws under which they originated, the same as if such laws remained in force."

(See also *Watkins v. Inge*, 24 Kas. 612.)

We think that the tax deed in this case fairly shows by unavoidable implication, that the assignment of the tax-sale certificate was made by the county clerk; and such was the fact. In fact, every thing was done that was necessary to be done in order to make the tax deed a good tax deed.

3. Sufficient assignment.

It is claimed, however, by counsel for Rice, that a "macadam tax" is no tax at all, but only a "special assessment for improvements;" and they further claim that there is no law authorizing a tax sale for special assessments for improvements, and therefore that the tax sale in the present case and the tax deed founded thereon are absolutely void. Their principal authority for this claim is § 33 of the act of 1872 relating to cities of the second class, which reads, so far as it is necessary to quote it, as follows:

"SEC. 33. The assessments made pursuant to the third clause of the second subdivision of the preceding section shall be known as 'special assessments for improvements,' and, except as hereinafter provided, shall be levied and collected as one tax in addition to the taxes for general revenue purposes, and shall be certified by the city clerk to the county clerk, to be placed on the tax-roll for collection, subject to the same penalties and collected in like manner as other taxes under existing laws."

Now while it is true that a "macadam tax" is a special assessment for improvements, yet it is also a tax, and the section of law relied on by counsel for Rice to show otherwise, shows that it is a tax, and also shows that it may be placed upon the tax-roll of the county for collection, and may be collected in the same manner as other taxes are collected under existing laws. See also § 43 of the act last mentioned.

4. Macadam tax—sale—tax deed.

But after claiming that this "macadam tax" is no tax at all, but only an assessment, then they virtually claim that it

is not an assessment, and this for the reason, as they claim, that there can be no assessor.    It is true that the assessors in such cases are not called assessors.    They are called appraisers.    They are "three disinterested appraisers appointed by the mayor and council."    (Sec. 32 of the act relating to cities of the second class.)  They ascertain, appraise and assess the value of the property, and upon this valuation the amount of the assessment, or tax, or whatever it may be called, is fixed.    This claim, that there are no assessors in a case of special assessments or "macadam tax," is made for the purpose of destroying the *prima facie* character of the tax deed in this case; for the statute does not provide that a tax deed shall be *prima facie* evidence except "from the valuation of the land by the assessor, inclusive, up to the execution of the deed." (Tax Law, § 138.)  We think the appraisers of the property in cases like this are virtually assessors, and therefore this point against the tax deed can have no force.    But even if the appraisers are not assessors, still if we call the macadam tax a special *assessment* for improvements, there must be an assessor or assessors.    There can hardly be an assessment without an assessor.

5. Tax deed, prima facie valid.

We have now considered every objection urged by counsel for Rice against the tax deed; and we do not think that any one or more of them, or all together, are sufficient to defeat the tax deed.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.