# LAWRENCE v. MURPHY.

## No. 2671.   Decided April 2, 1915 (147 Pac. 903).

1. TAXATION—TAX DEEDS—VALIDITY—SALE TO COUNTY. A tax deed, which recites that the property was struck off to the county, which was the highest and best bidder therefor, is void on its face, since the county cannot engage in competitive bidding.[1] (Page 575.)

2. ADVERSE POSSESSION—COLOR OF TITLE—VOID TAX DEED. A tax deed, though void on its face, may be good as color of title, and sufficient to support a decree quieting title in the holder thereof.[2] (Page 576.)

3. PROCESS—PUBLICATION—UNKNOWN PARTIES—PLEADING. Under Comp. Laws 1907, Section 2951, providing that if a plaintiff shall allege that there are, or he believes there are, persons interested in the subject-matter of the complaint whose names he cannot insert therein because they are unknown to him, and shall describe the interest of such persons and how derived, so far as his knowledge extends, the court may order publication of summons, reciting the substance of the allegations of the complaint, and can acquire jurisdiction of such unknown persons by such publication, as the similar Missouri statute from which that section was taken was construed before its adoption in Utah, the allegations therein required must be made in the complaint, and a statement of them in the affidavit for the publication of summons is insufficient. (Page 576.)

4. PROCESS—PUBLICATION—UNKNOWN PARTIES—SUFFICIENCY OF ALLEGATIONS. Under that section an allegation that the interest of the unknown parties is that derived as heirs of certain named persons, and consists simply of such interests in the premises as would descend to them upon the death of the named persons, is insufficient. (Page 579.)

5. COURTS—PRESUMPTION OF JURISDICTION—DEFECT IN RECORD. Where one relying on a decree quieting title to land in himself introduces a judgment roll to establish the decree which shows that the court had no jurisdiction over certain defendants,

---

[1] Wall v. Kaighn, — Utah —; 144 Pac. 1110.

[2] Boucofski v. Jacobson, 36 Utah 165; 104 Pac. 117; 26 L. R. A. (N. S.) 898; Welner v. Stearns, 40 Utah 185; 126 Pac. 490; Ann. Cas. 1914C 1175.

there is no presumption that the court, though one of general jurisdiction, had jurisdiction to render the decree.   (Page 580.)

6.  MORTGAGES—FORECLOSURE BY ACTION—DEATH OF MORTGAGORS. The foreclosure of a mortgage against mortgagors who were dead at the time is a nullity.  (Page 580.)

7.  MORTGAGES—TRANSFER—CONVEYANCE AFTER VOID FORECLOSURE. A conveyance of property by a mortgagee, who had foreclosed the mortgage and secured a sheriff's deed to the property, where the foreclosure proceedings and deed were void, operates as a transfer of the mortgage and the debt secured thereby. (Page 580.)

8.  LIMITATION OF ACTIONS—PERSONS ENTITLED TO BENEFIT—HOLDER OF VOID TAX DEED.  The statute of limitations will not bar the rights of a mortgagee in possession against one claiming under a void tax deed, unless it be to the extent of a lien for the taxes.[3]  (Page 582.)

Appeal from District Court, Third District; *Hon. C. W. Morse*, Judge.

Suit to quiet title by Franklin Lawrence against C. E. Murphy.

Judgment for plaintiff.   Defendant appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*J. Ingebretsen* for appellant.

*C. S. Patterson,* for respondent.

FRICK, J.

The plaintiff, respondent here, brought this action in the District Court of Salt Lake County to determine adverse claims and to quiet title to the real estate in question, three city lots, in himself.  His claim of title is based upon a tax deed and upon a decree quieting the title, which was in fact based upon said tax deed, although it does not so appear from either the pleadings or decree in said action.   The defendant in this

---

[3] *Boucofski* v. *Jacobsen,* 36 Utah 165; 104 Pac. 117; 26 L. R. A. (N. S.) 898.

action, appellant here, was, however, not made a party to the action in which the decree aforesaid was obtained. It is contended, however, that those through whom he claims were made parties, and hence he is bound. The effect of that decree will be fully considered hereafter.

The appellant's answer and counterclaim in this case is very voluminous, and sets forth in detail the history of the title and prior litigation relating thereto. We shall refrain from setting forth any part of the answer and counterclaim, but will content ourselves with the statement that appellant claims title to the lots in controversy from the indorser of certain notes and the assignment of the mortgage given on the lots in question to secure said notes, and which mortgage was foreclosed and the lots were sold to the said assignee, to whom a sheriff's deed was made therefor, and who afterwards conveyed the same to appellant. A number of conveyances, judgments, and decrees are pleaded and produced in evidence; but inasmuch as the respondent must succeed if he succeeds at all upon his claim which rests upon said tax deed and the decree based thereon quieting the title in him, while appellant must prevail, if he prevails in this case, upon his rights arising out of the transfer to him of the interest of the assignee and the notes and mortgage aforesaid, who, as purchaser at the foreclosure sale, obtained a sheriff's deed to said lots and thereafter conveyed the same to appellant, we shall not refer to the numerous deeds, transfers, and judgments in the record, except as it may become necessary to illustrate some point in the course of this opinion.

The facts are not in dispute, and those that control, briefly stated, are: That in December, 1888, one John W. West and his wife, Sarah A. West, were the owners of the lots in question; that at said time they made and delivered to one St. George their certain promissory notes, and, to secure the payment thereof, executed a certain mortgage on said lots; that said St. George, before the maturity of said notes, indorsed the same to one Walter Bryant and duly assigned to him said mortgage, which mortgage and assignment thereof were duly recorded in Salt Lake County; that only a part of said notes was paid to Bryant, and he, in 1904, foreclosed said

mortgage and bought in said lots at the foreclosure sale, and, no redemption having been made, he thereafter obtained a sheriff's deed therefor, and thereafter, in 1907, conveyed said lots to appellant; that the Wests, the owners of said lots and mortgagors, in 1891, and before said notes and mortgage matured, ceased to be residents of this state and thereafter remained nonresidents thereof. Said Bryant, in 1906, before he conveyed said lots to appellant, also obtained a decree quieting the title thereto in him, but the respondent was not a party to that action. Counsel for appellant contended in the court below, and now contends, that whatever interest respondent had, if any, in said lots, was actually, if not nominally, owned by one of the defendants to the action last referred to, and hence respondent never has had, and does not now have, any rights in the lots in question. For reasons hereinafter appearing this phase of the case is not important. The district court, upon the evidence, found the issues in favor of respondent, quieting the title to the lots in question in him, and disallowed all of the claims and contentions of appellant, and hence this appeal.

We shall not set forth the findings, nor pause here to review them, since a correct result in this case may be reached upon the evidence, practically all of which is documentary and undisputed. Proceeding, therefore, to a consideration of respondent's claim of title to the lots in question, we observe that the record, beyond dispute, shows that the claim is based upon a tax deed issued by the auditor of Salt Lake County on the 27th day of January, 1903. This tax deed is based upon taxes for the year 1898 which were assessed against said Wests upon the lots in question as the owners thereof. The taxes were not paid and the lots were sold to Salt Lake County as the highest and best bidder, as appears upon the face of said tax deed. The appellant contends that, for that as well as for other reasons, said tax deed was void upon its face, was a nullity and without force or effect, and hence respondent acquired no rights whatever thereunder. We have in a very recent case (*Wall* v. *Kaighn,* 45 Utah 244; 144 Pac. 1100) held that a tax deed which is based upon a sale to the county as a competitive bidder is void

upon its face, and in and of itself confers no rights upon the grantee. We are well satisfied with the conclusion there reached, and the writer could not, if he would, add anything to the reasons there advanced. Upon the question of the effect of a void tax deed, see, also, *Martin* v. *White*, 53 Or. 319; 100 Pac. 293, where it is held by the Supreme Court of Oregon that a deed void upon its face is a mere nullity. To the same effect is *Matthews* v. *Blake*, 16 Wyo. 116; 92 Pac. 242; 27 L. R. A. (N. S.) 339, where the cases upon the question are collated. It follows, therefore, that the tax deed in question was void and of no legal force or effect.

Counsel for respondent, however, contends that the tax deed, although void on its face, may nevertheless be good as color of title, and also be sufficient to support an action to quiet title, and that a decree quieting the title in the holder of such a deed is binding upon all the parties to such action, and is so also upon their privies. That a tax deed may be used for those purposes is, we think, the legal effect of our own holdings in the cases of *Boucofski* v. *Jacobsen*, 36 Utah 165; 104 Pac. 117; 26 L. R. A. (N. S.) 898, and *Welner* v. *Stearns*, 40 Utah 185; 120 Pac. 490; Ann. Cas. 1914C, 1175. In a note to the case of *Jasperson* v. *Scharniko*, 15 L. R. A. (N. S.) pp. 1218 to 1233, the cases upon the question of what is sufficient to support a claim of title or an action to quiet title are collected by the annotator.

While it is true that a tax deed, though void upon its face, may nevertheless sustain a claim of adverse possession, if the claimant is in actual possession under a *bona fide* claim, or, under our statute, will support an action to determine adverse claims and to quiet title, yet we must determine the further question, namely: What is the effect of respondent's action to quiet title in himself to the lots in question? That action was commenced in October 1907, and the decree quieting title was entered in December of that year. John W. and Sarah A. West, the original—and, as it appears, the present—owners of the title to the lots in question, were made parties, and so were "the unknown heirs of John W. West, Sarah A. West, [and] the unknown heirs of Sarah A. West." The foregoing reference, as quoted, ap-

pears in the title of that action, and is the only reference made
to the Wests or their heirs, or either of them, in the complaint.
The complaint in that action was very brief and in substance
merely alleged that the plaintiff was the owner of certain
lots in Salt Lake City, describing them, among which were
the lots in question, and that the defendants claimed some in-
terest in or right to the lots described, which claims, it was
averred, were without foundation or right. Appellant then
prayed that he be declared to be the owner of the lots de-
scribed and that the title thereto be quieted in him. Many of
the defendants in the action, including the Wests, were non-
residents of and absent from the state. In view of this, an
affidavit for service by publication was filed, and an order for
service of summons by publication was obtained. As we have
already pointed out, no reference to the Wests, or to their
heirs, known or unknown, was made in the complaint; but in
the affidavit for service by publication the following reference
was made, to wit:

"Affiant further alleges that he verily believes that there
are persons interested in the subject-matter of the complaint
whose names cannot be inserted therein, because they are un-
known to this affiant and to the plaintiff, said persons being
the unknown heirs of John W. West and the unknown heirs
of Sarah A. West; that the only interest the said unknown
heirs have in such matter is derived through John W. West
and Sarah A. West, and consists simply in such interests ad-
verse to the plaintiff in the property described as would de-
scend to said unknown heirs in case of the death of the said
John W. West and Sarah A. West."

Now it is made to appear, without dispute, from the rec-
ord, that John W. West died on December 30, 1897, Eulalia
Grace West, a daughter, and, so far as known, the only child
of John W. West and Sarah A. West, died without issue, so
far as known, on August 28, 1901, and Sarah A. West, the
wife of John W. and mother of Eulalia West, died on the 28th
day of February, 1904. Whether the Wests left any heirs,
lineal or collateral, is not made to appear from the record.
All of the Wests were dead, therefore, when respondent's ac-
tion to quiet title to the lots in question was commenced, and

hence he obtained no service of any kind upon John W. and Sarah A. West. But respondent contends that his action and service by publication was good as against the unknown heirs of the Wests, and further contends that it may be presumed that the Wests left some heirs, either lineal or collateral. Appellant's counsel insists, however, that in view of our statute (Comp. Laws 1907, section 2951) the District Court of Salt Lake County acquired no jurisdiction of the West heirs, whether known or unknown.

Section 2951 reads as follows:

"If any plaintiff shall allege that there are, or that he verily believes that there are, persons interested in the subject-matter of the complaint, whose names he cannot insert therein, because they are unknown to him, and shall describe the interest of such persons, and how derived so far as his knowledge extends, the court or the judge thereof shall make an order for publication of summons, reciting, moreover, the substance of the allegations of the complaint in relation to the interest of such unknown parties; and after the completion of service by such publication, the court shall have jurisdiction of such persons, and any judgment or decree rendered in the action shall apply to and conclude such persons with respect to such interest in the subject-matter of the action."

This section, with the exception of the necessary changes to make it applicable to the terms used in our statute respecting pleadings, etc., is a verbatim copy of the statute of Missouri, which, as we shall see, was in force in that state many years before it was adopted by this state in 1898 as section 2951 of the revision of 1898. It will be observed that section 2951, *supra*, provides that if the plaintiff alleges that there are, or that he verily believes that there are, persons interested in the subject-matter of the complaint (in that action, the lots in question), whose names he cannot insert in the complaint because they are unknown to him, and he shall "describe the interest of such persons, and how derived so far as his knowledge extends, the court or judge thereof shall make an order for publication of summons, reciting, moreover, *the substance of the allegations of the complaint in relation*

*to the interest of such unknown parties,"* etc. (Italics ours.)
It is obvious that the statute requires that certain statements
respecting the interest of the unknown persons shall be made,
and from that portion which we have italicized it is palpa-
ble that such statements must be made in the complaint, which
is the foundation of the action.   The question has, however,
been before the Supreme Court of Missouri, from which state
our statute is derived, a number of times, and that court has
persistently and consistently held that, unless the statements
required by the statute are contained in the complaint, the
court acquires no jurisdiction, and that the judgment or de-
cree based upon such a complaint is a nullity.   The last case
coming to our notice from Missouri is *Davis* v. *Montgomery,*
205 Mo. 271; 103 S. W. 979.   That was an action against un-
known heirs to quiet title, and in view that the interests of
such heirs were neither averred nor described in the complaint
the court held, on collateral attack, that the decree quieting
the title was of no force or effect as against another claimant.
The same result had before been reached in *Eminence, etc.,
Co.* v. *Land & Cattle Co.,* 187 Mo. 437, 438; 86 S. W. 150.

We remark that, as we have pointed out, some reference to
the unknown heirs is made in the affidavit filed by respondent
for service by publication.   In the last case cited it is
held that statements like those in the affidavit are whol-        **4**
ly insufficient to confer jurisdiction upon the court.   If
it were held, therefore, that the statements required by section
2951 may be omitted from the complaint, which we, however,
hold may not be done, yet the allegations in the affidavit for
service by publication in respondent's action were wholly in-
sufficient, even though they had been made in the complaint.
The Supreme Court of Missouri, however, had construed the
statute as early as 1882, or sixteen years before it was adopted
in this jurisdiction, which was in the Revised Statutes of 1898,
which went into effect in January of that year.   For earlier
Missouri cases, see *State* v. *Staley,* 76 Mo. 158; and *Quigley*
v. *Bank,* 80 Mo. 289; 50 Am. Rep. 503. . Under similar stat-
utes other courts have arrived at the same conclusion.   See
*Cobb* v. *Hawsey,* 56 Fla. 159; 47 South. 484; also *Indiana,
etc., Co.* v. *Brinkley,* 164 Fed. 965; 91 C. C. A. 91.

It is contended that the finding of the court upon which the decree quieting title in respondent is based is to the effect that due and legal service of summons was had upon all the parties named as defendants in said action. That finding, however, cannot aid respondent. As clearly pointed out by Mr. Justice Sanborn in the case last cited, where, as in this case, the record itself discloses the lack of jurisdiction, then the usual presumptions in favor of courts of record, or of general jurisdiction, are of no avail. In this case respondent himself produced the judgment roll of the action in which the title was attempted to be quieted in him, and it appears therefrom that both the complaint and affidavit of service by publication were deficient in substance in the particulars before stated. The district court, therefore, acquired no jurisdiction of the unknown heirs of the Wests, and hence the decree, so far as those interests are concerned, is a nullity. Nor did the respondent acquire anything from the other defendants, since their interests were all based upon the void tax deed, and therefore they had nothing. The tax deed being void, and the decree upon which it was based being a nullity, and the respondent not being in the actual possession of the lots in question, he has no claim of title thereto whatever. What, if any, other claim he may have against the lots in question, we shall consider hereafter.

We proceed, therefore, to a consideration of what rights, if any, the appellant has to the lots in question. In view that the Wests, the mortgagors, were dead at the time of the mortgage foreclosure, all acts taken in pursuance of that action are also void. The same is true of the decree obtained in the action in 1905 by Walter Bryant, the grantor of appellant, to quiet the title to the lots in himself.

The question therefore arises: Has the appellant any rights to or interest in the lots in question? Of course, appellant could not acquire title from Bryant, since he had no title. Bryant was, however, the owner of the notes and mortgage which had been given by the Wests, the owners of the lots in question. While the mortgage did not transfer the title to the lots, it nevertheless constituted a lien upon or an interest in them. This interest was assignable, and,

although the proceedings relating to the mortgage foreclosure were void, yet the deed from Bryant was sufficient to transfer whatever interest the former had in the lots to appellant. To this effect are all of the authorities. The Supreme Court of Oregon, in *Cooke* v. *Cooper*, 18 Or. 142; 22 Pac. 945; 7 L. R. A. 273; 17 Am. St. Rep. 709, in passing upon the effect of a deed which is based upon void mortgage foreclosure proceedings, says:

"These conveyances, if they failed to pass title to the lots described, operated as an assignment of Boeschen's mortgage to the successive grantees named in said several deeds [citing cases]. If the Boeschen mortgage was not foreclosed, it remained in full force and unsatisfied, and by the conveyances set out in the findings was owned by George Cooper," the last grantee under the mortgage foreclosure.

In 27 Cyc. 1291, the rule is stated thus:

"Where, however, the mortgagee attempts to foreclose, and purchases at the sale under his decree, takes possession, and then conveys to a third person, and the foreclosure sale proves to have been void, his conveyance will be held to operate as an assignment of the mortgage."

To the same effect are *Smithson Land Co.* v. *Brautigam*, 16 Wash. 174; 47 Pac. 434, and *Pettit* v. *Louis*, 88 Neb. 496; 129 N. W. 1005; 34 L. R. A. (N. S.) 356. Although the foreclosure proceedings instituted by Bryant were void, yet the conveyance of the lots by him to appellant had the effect of an assignment of the notes and mortgage to the latter. The notes and mortgage, at least so far as the Wests are concerned, were at the time of the assignment as aforesaid, and still are, in full force and effect. Appellant, therefore, has whatever rights the assignment of the notes and mortgage gave him to the lots in question. He is in possession of them, and therefore, in legal effect, has the ordinary rights of a mortgagee in possession after the maturity of the debt and before foreclosure. True, respondent contends that appellant's possession is what is known as a scrambling one, since respondent has attempted to dispute it If, however, the possession is a scrambling one, it is so only because of respond-

ent's attempts to gain possession himself; and, since he had and has no right to the possession at all, appellant's possession is certainly good enough, as against respondent's, whatever its character may be. As a mortgagee in possession under the mortgage, given by the owners of the title, appellant's rights cannot be successfully assailed by any one who claims under the void tax deed or under the void decree based thereon. The mortgage, therefore, not having been foreclosed, is still in full force, and may be foreclosed as against the Wests and as against their heirs.

True, as was held in *Boucofski* v. *Jacobsen, supra,* although the mortgage may not be barred as against the Wests, it may nevertheless be as against the claims of others who have acquired interests in the property either since or before the mortgage was given. Respondent relies upon that case, and contends that he has such an interest. In view, however, that the tax deed and the decree quieting the title in him, based thereon, are both void and of no force or effect, he cannot and does not bring himself within the rule laid down in *Boucofski* v. *Jacobsen,* unless he may do so to the extent of his lien for taxes. A void tax deed without possession does not set in motion the statute of limitations so far as any rights claimed thereunder are concerned. See *Martin* v. *White, supra, Matthews* v. *Blake, supra,* and note in 27 L. R. A. (N. S.) 339. In view, however, that appellant does not seriously dispute that respondent may be given a lien upon the lots in question for the amount of the taxes paid by him, we, under the circumstances, shall not question his right to such a lien. But under the undisputed facts, when applied to the law, that constitutes all the claim that respondent can have as against the claim of appellant. As between these claims, therefore, the maxim may well be invoked that in coming into a court of equity both parties must do equity.

In view of all the circumstances and the admissions of appellant, we shall therefore not consider the effect of the statute of limitations in so far as that question might affect respondent's lien for taxes. We, however, do hold that respondent cannot invoke the statute of limitations as against

the claim of appellant, and that the appellant has a prior lien upon the lots in question for the taxes paid by him, which were subsequent to the taxes paid by respondent, and also has a subsequent lien, to respondent's lien for taxes and legal interest thereon, for any amount due upon the notes and mortgage, including a reasonable attorney's fee in case of foreclosure of the mortgage. The pleadings of respondent should be so amended as to permit him to recover the amount due him for taxes paid, and the pleadings of appellant should be amended so as to authorize a foreclosure of the mortgage, and, further, to permit a judgment for the taxes paid by him. It would seem that, before proceeding to foreclose the mortgage, it were better if an administrator were appointed of the West estate, and in that proceeding the question of heirship could be legally settled. After that is done the proper parties to the foreclosure proceedings may be ascertained, and a legal decree of foreclosure entered, and the lots ordered sold and the proceeds distributed to the parties in interest as herein indicated.

The judgment is therefore reversed, and the cause is remanded to the District Court of Salt Lake County, with directions that, if the parties shall conform to the suggestions respecting the amendment of their pleadings, then said court shall proceed with the case as hereinbefore indicated, and if the parties refuse to so amend their pleadings, then to dismiss the action, making such distribution respecting the payment of costs as to the court may seem just and proper. Neither party to recover costs in this court.

STRAUP, C. J., and McCARTY, J., concur.