HATCH v. EDWARDS et al. AND FOUR OTHER CASES.

Nos. 4558-4562. Decided February 18, 1928. Rehearing Denied July 5, 1928. (269 P. 138.)

114

*Jesse P. Rich,* of Logan, for respondent.

*Young & Bullen,* of Logan, for respondent.

CHERRY, J.

The five above-entitled cases were, by stipulation, tried together in the court below, and separate judgments entered. They have also been argued and submitted together in this court. The cases are identical in their nature and purpose, and involve, with the exceptions hereinafter stated, the same questions. The actions are to quiet and confirm the title of the plaintiff to the several tracts of real estate

described respectively in the complaints. The plaintiff claims title in each case by virtue of a tax deed issued pursuant to a sale for delinquent taxes assessed and levied, for the general purposes of the district, upon the real estate in question by and in behalf of Cache County water conservation district No. 1, an irrigation or water conservation district organized under chapter 68, Laws of Utah 1919, as amended by chapter 73, Laws of Utah 1921. In the district court the plaintiff had judgment in his favor in each case from which the defendants, respectively, have appealed.

The plaintiff's title in each case depends exclusively upon his tax deed, the validity of which is the ultimate question to be determined.

To the original complaints filed the respective defendants filed demurrers which were overruled. Trial was then proceeded with, and, after evidence on both sides has been produced, amendments to the complaints were permitted by the court. The defendants were permitted to, and did, file demurrers to the amended complaints, which were overruled. They thereupon adjusted their answers to the amended complaints, and, without objection, proceeded futher with the trial, expressly stipulating that the evidence previously taken be considered as being then introduced.

Appellants here complain that the court erroneously permitted the complaints to be amended at a time when it is claimed the cases had been submitted and were ready for decision. This complaint must be dismissed, not only for lack of intrinsic merit, but because the record shows that appellants' counsel consented in open court to the amendments, and proceeded with the trial without any objection whatever on that account.

It is contended, however, that the amended complaints fail to allege necessary facts essential to the plaintiff's title, and that the demurrers thereto should have been sustained. The complaints purport to allege in detail the complete proceedings from the organization of the

district to the execution of the tax deeds relied upon, including the intermediate proceedings by which the taxes were assessed and levied, and the property sold for nonpayment thereof, and attached to the complaints, as exhibits, are copies of the tax sale certificates and auditor's tax deeds. While appellants admit that much unnecessary matter is alleged, they insist that there is not sufficient or any averments that the county assessor, in making the assessment, entered upon the assessment roll the amount of special benefits against each tract of land. This is claimed to be necessary as the basis of the tax, by reason of certain language hereafter quoted, contained in section 18, c. 68, Laws of Utah 1919. That section, after providing that it shall be the duty of the county assessor to assess and enter upon his records all real estate in the district to which water has been allotted and to assess the lands on the basis of the value per acre foot of water allotted thereto, further provides:

"And the assessor shall enter on his assessment roll the amount of special benefits assessed against each tract of land within any local improvement district situate in the irrigation district as the same is shown on the equalized benefit assessment roll of said improvement district."

The language quoted has plain reference to the assessments for local improvement districts within an irrigation district authorized by sections 56-63 of chapter 68, Laws of Utah 1919, and has no application to the assessments in question, which do not involve special benefits to particular lands in the district, the funds required for the district, as a whole, as in the cases in question, are raised by assessment and levy of taxes upon the lands to which water has been allotted upon "the basis of the value per acre foot of water allotted to the lands within the district." There is no propriety or necessity for any other determination of benefits to land as the basis for assessment.

Another objection to the sufficiency of the complaints is that it is not alleged therein that the assessments were made on the basis of the value per acre foot of water alloted to the land assessed. The allegation in this respect is "that the county assessor * * * assessed all the lands in said district and made a return of the total amount of such assessment to the county commissioners of said county, all duly in the manner prescribed by section 18, chapter 68, of the Session Laws of Utah 1919." This is followed by an allegation that the county commissioners fixed the rate of levy necessary to provide the amount of money required by the district, and in accordance therewith levied upon the particular land described a specified sum of money as a tax thereon.

We think the averment of assessment is sufficient. The act provides that the assessment shall be made on the basis of the value per acre foot of water allotted to the lands. It cannot be lawfully made in any other way. Disregarding the qualifying phrase, "duly in the manner prescribed by section 18," etc., as a mere legal conclusion, there is left in the complaints the allegation that the assessor assessed the lands and made a return thereof to the county commissioners. It will be presumed, where nothing to the contrary appears, that an act, especially of a public officer, was done in a lawful manner. There is thus comprehended within the allegation that the assessor assessed the land the necessary implication that he assessed it in the manner required by law. And, for the purpose of showing that step in the proceedings in question, we find the allegations of the complaints sufficient.

It is next contended that the certificates of sale, as set out in the complaints, affirmatively show that the sales were illegal and the tax deeds void because it is claimed that it appears from the certificates that the county was a competitive bidder and voluntary purchaser at the sales. The complaints allege that the sales were made to the county and the certificates of sale thereafter

assigned to the plaintiff. Appellants cite and rely upon *Wall* v. *Kaighn*, 45 Utah 244, 144 P. 1100, *Lawrence* v. *Murphy*, 45 Utah 572, 147 P. 903, and *Thompson* v. *Taylor*, 61 Utah 164, 211 P. 696, where it was held under statutes then in force that it was fatal to the proceedings if it appeared that the county had been a competitive bidder or voluntary purchaser. The statutes in force at that time required the treasurer to expose for sale sufficient of the delinquent real estate to pay the taxes and costs at public auction and sell the same to the highest responsible bidder for cash, and that, if no bid was received, the treasurer was required to make a certificate of sale to the county, and deliver it to the auditor, who was required to credit the treasurer with the amount of the tax due thereon. In *Wall* v. *Kaighn*, supra, and in *Lawrence* v. *Murphy*, supra, the recitals showed sales to the county for the highest and best bids, indicating that the county was a competitive and voluntary purchaser, which the statute did not authorize, and the sales were accordingly held bad. In *Thompson* v. *Taylor*, supra, upon a less positive recital, the court concluded that it sufficiently appeared that the county was a bidder at the auction sale, and had paid the delinquent taxes without authority of law, which rendered the sale void. The essential principle of all three cases is that the statute then under consideration permitted a sale to the county only on condition that the delinquent property be first offered for sale in a particular manner at public auction, and that no bids be made therefor, and that, after such offer and the failure to receive bids, the property was to be transferred to the county, not in pursuance of a bid or offer, but by operation of law, and that anything in the certificate or deed which indicated a departure from the statute avoided the sale.

The statute, the provisions of which controlled the decisions in the cases referred to, was materially changed when the tax sales involved in the present cases were made. The requirement that delinquent real estate be offered for sale

at public auction and sold to the highest responsible bidder, etc., as provided by Comp. Laws Utah 1917, § 6018, was amended by Laws Utah 1921, c. 139, so that the prescription of law in that respect at the time of the sales in question was that "the county treasurer shall sell to the county all delinquent real estate to pay the taxes, penalty and costs for which such real estate is liable." The statute, since the amendment contains no requirement or authority for selling the delinquent lands at public auction or to any purchaser other than the county. The whole doctrine of the cases referred to and dealing with the former statute can therefore have no application to the statute as amended and changed. We find no departure in the recitals of the certificates of sale and deeds in controversy from the statutory directions. The certificates of sale are substantially in the form prescribed by Laws of Utah 1921, c. 139.

This form of certificate required by the statute contains the recitals that the treasurer offered the property for sale, that no person offered to bid and pay the taxes and costs required, and therefore, pursuant to law, the property was sold to the county, etc. This part of the form is inconsistent with the preceding provision of the same act which peremptorily requires the treasurer to sell the delinquent property to the county. But the conflict is of no substantial concern. The net effect of the proceedings here as shown by the recitals in the certificates is that the delinquent property was sold in the manner provided by law to the only purchaser to whom, under the statute, it could be sold. The cases referred to under the previous statute were decided against the validity of the sales upon the ground that the sales were made to the county in a manner not authorized by the existing statutes and under such circumstances as disqualified the county from being the purchaser. No such consideration is present or applicable to the sales in question under the statutes now in force. We conclude, therefore, that the recitals contained in the certificates of sale do not invalidate the proceedings.

The proceedings resulting in respondent's tax titles are assailed by appellants on account of supposed defects and discrepancies in the descriptions of the various tracts of land involved. It is contended that the descriptions of land in several of the tax deeds in controversy do not substantially agree with the corresponding descriptions of land in the previous proceedings upon which such deeds are respectively based. It is also argued that the descriptions of the land, in several cases, as contained in the record of allotment of water and the assessment roll, are defective and objectionable. The record in this court is such that we are unable to consider all of the questions argued by appellants on this subject. The bill of exceptions does not purport to contain all of the evidence, but expressly states that the documentary evidence is omitted. We have access to no authentic record of the descriptions of land to which water was allotted, or which was assessed for taxation. The facts with respect to the description of the lands in controversy are not exhibited by the record on appeal, except as they are disclosed by the pleadings. And our review, in this connection, must be confined to the questions presented by the pleadings. The complaints, in each case, set forth in full the certificates of sale and tax deeds issued in pursuance thereof. In three of the cases under consideration there are instances of where a particular tract of land is described in the certificate of sale as having been sold for the tax, and only a portion thereof described in, and conveyed by, the corresponding auditor's tax deed; that is, the deed describes and conveys a less quantity of land than is described in the certificate of sale. Both descriptions are definite and certain, and the land described in the deed is plainly included in the land described in the certificate. The record in case No. 4558, which is the only one shown in the abstract, illustrates the situation in this respect in all the cases where the question arises. There a certificate of sale described the property sold as: "S. E. $\frac{1}{4}$ S. W. $\frac{1}{4}$, less road, section 8, Tp. 12, R. 1 W. 39 acres."

The description in the tax deed was "the east 60 rods of the southeast quarter of the southwest quarter, section 8, Tp. 12, range 1 west, 30 acres, less road."

We fully approve the quotation contained in appellants' brief from *Stout* v. *Mastin*, 139 U. S. 151, 11 S. Ct. 519, 35 L. Ed. 121, as follows:

"A tax deed to be valid must not only substantially conform to the requirements of the statute, but must correspond with the proceedings upon which it is based in all essential particulars. The county treasurer must give to the purchaser, on the payment of his bid, a certificate describing the lands purchased in accordance with the records of the tax proceedings in his office. If the land be not redeemed within the time prescribed by the statute, the county clerk of the county where the land is sold, on presentation to him of the certificate of sale, must execute in the name of the county, as county clerk, to the purchaser, his heirs or assigns, a deed to the land remaining unredeemed; but he has no power to insert in the deed executed by him another and different description from that contained in the tax proceedings."

To the same effect is 37 Cyc. 1449.

But this statement of law contains nothing which invalidates the deeds in question. We have no case here of a defective and insufficient description of land in the certificate, attempted to be cured by a good description in the deed. Neither do we have a certificate of sale for one tract of land and a deed for another and different one. It is clear enough here that the same and all of the land deeded was previously sold. That less was deeded than sold is, in itself, not a matter for valid objection by the landowner. It could be that part of the land had been redeemed after the sale and before the deed was executed. The objections to the proceedings on this account must fail. We discover no error in the overruling of the demurrers to the amended complaints.

Appellants have argued some other questions concerning the time and manner of conducting some of the pro-

ceedings and questions relating to the admission of certain documentary evidence. They also contend that certain findings are not supported by the evidence. We are unable to review these assignments, because, as before stated, the whole record of the evidence is not brought here. None of the exhibits or documentary evidence have been authenticated or made a part of the record on appeal. Having no access to the facts upon which these assignments are based, we cannot consider them.

It is finally contended that there was no authority of law for the assignments of the certificates of sale for the lands in controversy from the county to the plaintiff. It was alleged in the complaints, and found by the court, that the tax sales in question in each case were made to the county, and that the county treasurer thereafter assigned the certificates of sale to the plaintiff upon which, after the time for redemption expired, he obtained auditor's tax deeds.

The tax sales were made January 20, 1923. Thereafter the Legislature enacted chapter 9, Laws of Utah 1923, which took effect February 13, 1923, by which the county treasurer is "authorized and required to sell and assign the interest of the county in any of the real estate sold to the county for delinquency of district taxes, to the district itself, * * * or to any person who will pay the tax," etc. Thereafter, and on July 19, 1923, the certificates of sale in question were assigned to the plaintiff.

Appellants say that the act of February 13, 1923, can have no retrospective effect, and that it is no authority for the assignments in question, because it was enacted after the delinquent tax sales in question had been made. But whether this is so or not we need not now bother to inquire. If the authority for the assignments is not found in this act, it is found elsewhere in statutes which were in effect at the time the sales were made. By section 21, c. 68, Laws of Utah 1919, the revenue laws of the state for

the collecting of taxes on real estate for county purposes, including the enforcement of penalties and forfeitures for delinquent taxes, are made applicable for the purposes of the Irrigation District Act. And a provision of the general revenue laws, Comp. Laws Utah 1917, § 6023, as amended by chapter 122, Laws of Utah 1919, authorizes and requires the county treasurer "to sell and assign the interest of the county in any of the real estate sold to the county for delinquency, to any person or corporation holding a recorded mortgage or other lien against such real estate." It does not expressly appear that the plaintiff was a "person * * * holding a recorded mortgage or other lien against such real estate" at the time of the assignments to him. The complaint alleges that the county treasurer, "as required by chapter 9, Session Laws of Utah 1923, and by chapter 122, Session Laws of Utah 1919, sold and assigned the interest of Cache county in said property to the plaintiff." The tax deeds pleaded recite that the certificates of sale were "duly assigned by said Cache county to H. E. Hatch, Trustee," etc., and the court found the fact of assignment in the language of the complaint.

Comp. Laws Utah 1917, § 6030, authorizes the execution of a tax deed of property sold for delinquent taxes at the appropriate time "to the purchaser, his heirs, or assigns, as the case may be," and requires the deed to recite certain facts concerning the sale "and the name of the purchaser or assignee; and, when attested by the county auditor, shall be prima facie evidence of the facts recited therein."

In view of this state of the law and the record in these cases, we think that, inasmuch as nothing to the contrary appears, either by pleading or proof, it is a fair and legitimate presumption from what was pleaded and found by the court that the plaintiff was a qualified assignee of the certificates of sale. *Sanger* v. *Rice,* 43 Kan. 580, 23 P. 633.

Upon the record, we find nothing sufficient to impair the validity of the proceedings in question or the judgments

appealed from, and the orders must be, and are, that the judgments appealed from are affirmed.

THURMAN, C. J., and STRAUP, GIDEON, and HANSEN, JJ., concur.

On Petition for Rehearing.

CHERRY, J.

Appellants have filed a petition for rehearing, in which it is contended that this court overlooked a stipulation of the parties by which the exhibits and documentary evidence were made a part of the bill of exceptions, and that they were entitled to have considered and determined the questions illustrated by the exhibits which, in the opinion filed, were not considered. We have reexamined the record, and, as some doubt exists in the minds of some of the members of the court upon the question of whether the exhibits are properly here, we have concluded to take up and determine what counsel for appellants now designates as "the main question on appeal," and which challenges the sufficiency of description of the particular lands of appellants to which water was allotted by the order of the board of directors of the district in its final revision and allotment.

The record book of allotments is in the following form: Each entry line is divided into columns headed, Name of Owner, Address, Description of Land, Water Allotment Acre ft., Remarks. The matter complained of is illustrated by the record in one case which is typical of them all, in which the record shows the proper name and address of the owner, a correct description of 40 acres of land, and an original allotment of 80 acre feet of water, all entered in the appropriate columns. As obviously indicating the action of the board of directors of the district when making the final revision and allotment of water, a line is drawn through the figure "80" and the figure "60" is written directly above it and in the column headed "Remarks"

there is memoranda as follows: "10 acres, no allot. 60 acre feet, final allotment 11/22/21." A minute entry of the proceedings of the board of directors of the district, had at its meeting for the purpose of making its final revision and allotment of water to the lands in the district, is attached to the record book of allotments, wherein reference is made to the particular allotment above referred to as follows: "10 acres no allotment, wet, 30 acres, 2 acre ft. per acre, total allotment 60 acre ft." No change, however, was made in the description of the 40-acre tract of land in either record. Thereafter the proceedings with respect to this allotment were conducted upon the basis that 60-acre feet of water had been allotted to the 40-acre tract of land described, and the 40 acres of land described was subjected to assessments, and sold for nonpayment of the same.

The contention of appellants is that from the records referred to it conclusively appears that 10 acres of land referred to was not benefited by irrigation, and could ▪ not be subjected to assessments for the purpose of the district, and that the proceedings resulting in the subsequent sale of the 40-acre tract were void, because there was a sale of 10 acres of land not benefited by the improvement, and the 30 acres which were benefited and subject to assessment were not described. In support of this contention, it is argued that assessments for improvements of this kind must correspond to the benefits resulting to the land assessed, and that an assessment of property which is not benefited is void. This general principle is indisputable. But in applying it to a particular case it is not essential that every part of the property subjected to the assessment shall be directly benefited by the improvement. It is not only competent but necessary to classify property into units for the purpose of estimating benefits, and, unless the classification is arbitrary or unreasonable, the owner may not defeat the assessment by showing that some particular part of the unit assessed is not directly benefited.

The act (Laws Utah 1921, c. 73, § 2) requires the state engineer, in the first instance, to survey and allot water to each 40-acre tract or smaller tract in separate ownership within each legal subdivision, and (section 11 of the same chapter) provides that the final revision and allotment of water shall be to each 40-acre tract or smaller tract in separate ownership within each legal subdivision, and that such final allotment shall be the basis for all assessments, tolls, and charges levied against the land.

It appears plain that the Legislature intended to establish as the units for allotment of water and assessment each 40-acre tract or smaller tract in separate ownership within each legal subdivision. It is doubtful, in view of the statute, whether the board of directors of the district could properly reduce the area of land to which water was allotted below the unit fixed by law. But in our opinion such was not intended or attempted in the present case. The memoranda under the column headed "Remarks" was merely the explanation for reducing the allotment to the 40-acre tract from 80-acre feet to 60-acre feet. The record as completed plainly indicated an allotment of water to the full forty-acre tract of land described in the appropriate column, and was so interpreted and acted upon in the subsequent proceedings whereby the assessments were levied and the property sold.

In discussing the propriety of such apportionments, the Supreme Court of Montana, in *Walden* v. *Bitter Root Irr. Dist.*, 68 Mont. 281, 217 P. 646, said:

"This method of apportionment has had the benefit of long experience in other states and it is the consensus of opinion that no fairer method has been devised. It cannot be said that the unit selected as a basis, 40 acres or less, is unreasonable or in any wise arbitrary."

The objections to the proceedings on this account cannot be sustained. The conclusion arrived at in the former opinion is adhered to, and the petition for rehearing is denied.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.