## TELONIS v. STALEY ET AL.

No. 6168. Decided Dec. 29, 1943. (144 P. 2d 513)

538

See 32 C. J. S., Evidence, Sec. 640. Title based on defective tax sale proceeding, note, 115 A. L. R. 146. See, also, 26 R. C. L. 397.

For former opinion, see 106 P. 2d 163.

*H. G. Metos* and *Allen T. Sanford,* both of Salt Lake City, for appellant.

*Henry Ruggeri* and *F. W. Keller,* both of Price, and *O. K. Clay,* of Salt Lake City, for respondents.

*Thomas & Thomas,* of Salt Lake City, amicus curiae.

McDONOUGH, Justice.

Plaintiff appealed from a judgment of the district court of Carbon county quieting defendants' title to the surface rights of certain coal mining property. We affirmed the judgment of the district court in an opinion and decision reported in 106 P. 2d 163, 104 Utah 505. For reasons deemed adequate by the court, appellant's petition for rehearing was granted, and the case was reargued and reconsidered by the court.

In 1932 the Union Pacific Coal Company was the owner of record of property in Carbon County involved in this action. The State Tax Commission in that year assessed the values of the real estate, separately evaluating the surface rights and the mineral rights, and certified the same to Carbon County. These values were spread upon the county tax records. The company failed to pay the taxes, and after advertisement for delinquency the property on January 10, 1933, was sold for taxes to Carbon County. Record of the sales was noted in the Treasurer's office and a tax sale certificate for each tract was filed with the County Recorder. No redemption was made, and on January 12, 1937, the County Auditor issued auditor's tax deeds to the county. The property was advertised and offered for sale at the May sale, but there were no bidders. On June 18, 1937, at private sale for a consideration of $2,000, the county sold and conveyed to defendants Staley and Sillitoe, the surface rights to the property. In December, 1937, Staley and Sillitoe mortgaged the surface rights to defendant Carbon-Emery Bank for $4,000. On January 11, 1938, Union Pacific Coal Company, for a consideration of $200, quitclaimed the

real estate to plaintiff, who on February 2, 1938, commenced this action by filing a complaint in the simplest form to quiet his title. By both answer and counter-claim defendants asserted title in Staley and Sillitoe by virtue of the tax sale proceedings above noted.

The questions presented for reconsideration are as follows:

1. Are mineral rights and surface rights required to be separately taxed and sold when ownership of both reside in the same person?

2. May a tax sale certificate which does not show the year for which the property was sold for taxes nevertheless be admitted in evidence as a prima facie showing that necessary steps leading to the sale had been taken?

3. Did the failure of the County Auditor to authenticate the assessment roll with his affidavit as required by statute invalidate the assessment and sale for taxes?

We consider these questions in the order set forth.

1. In this case, Union Pacific Coal Company, grantor of plaintiff, owned both the surface and mineral rights in the land used for mining purposes. It made no request that the surface be taxed on its valuation separately from the mines and mineral rights. Owing to the common ownership and failure of the owner to request separate taxation, it was proper for the county officials to aggregate the valuations of both surface and mineral rights in applying the tax levy and in all proceedings subsequent thereto. Section 5864, C. L. Utah, 1917, as amended by Chap. 53, Laws of Utah 1931, and as embodied in Sec. 80-5-56, R. S. U. 1933, which relates to assessment of mines and mining properties, provides in part:

"* * * In all cases where the surface of lands is owned by one person and the mineral underlying such land is owned by another, such property rights shall be separately assessed to the respective owners."

Where the surface and underlying mineral of a claim or land are *owned by the same person* as shown by the records, they may be advertised and sold as one even though assessed separately. The reason for this is that where the surface property has adaptability for uses other ■ than mining purposes and is actually used for such other purpose, is has an additional assessable value which should be shown in the same manner as improvements are required to be shown in the assessment. *Barnard Realty Co.* v. *Butte,* 50 Mont. 159, 145 P. 946. But there is no requirement of the statute that the rights separately assessed should be separately advertised and sold. Nor is such the reasonable implication of Sec. 80-5-56, R. S. U. 1933, which merely requires assessment *to the respective owners* when the surface is owned by one person and the underlying mineral to another. Where there is separate ownership of the respective rights, separate levy and separate sale would necessarily follow; but where the rights are all owned by the same person the statute does not contemplate that, nor has any reason been shown why, the rights should be separately sold.

*Utah Copper Co.* v. *Chandler,* 45 Utah 85, 142 P. 1119, and *Utah Copper Co.* v. *Eckman,* 47 Utah 165, 152 P. 178, cited by the appellant, do not require a contrary conclusion. In each of these cases, the surface rights were occupied and used by the defendant and were assessed to him. The question raised was whether the defendant had by adverse possession (including the payment of taxes) acquired title thereto. While the apparent implication of these cases is that a separate estate in the surface rights was created by occupancy and use, thus justifying assessment to the claimant, we are not called upon to examine into the validity of such holding, since, though it be valid, it does not follow that where such rights are unquestionably owned by the same person they are to be regarded as separate estates for purposes of tax levy and sale.

2. The form of the certificate of sale is governed by Sec. 6021, Chap. 139, Laws of Utah 1921 (as modified it became 80-10-35, R. S. U. 1933), which specifies:

"The certificate of sale shall be substantially in the form hereinafter provided,"

and the form recites a sale of the property by the treasurer for the

"delinquent state, state school, state high school, county, city, city school, . . . . . . . . . . . . and district school taxes, for which said property is liable, assessed in the name of . . . . . . . . . . . . as owner for the year . . . . . ., together with the penalty provided by law and the costs of sale; that a description of the property sold is as follows, to wit: . . . . . . . . . . . ."

If the certificate were "substantially in the form hereinafter provided" the words "city, city school" would have to be deleted if the property were outside the limits of any city or town. The Legislature specified a form which would have to be modified as far as including ■ the words "city, city school," if the property were not within any city or town. To be substantially in the form specified in the statute, the certificate would have to show the year in which the taxes were levied and for which year the sale was made.

Immediately following the form of the certificate in Sec. 6021, Chap. 139, Laws of Utah 1921 (Chap. 95, Laws of Utah 1915), appears the following:

"The certificate of sale *herein provided for*, when signed by the county treasurer and delivered to the purchaser, shall be prima facie evidence of the regularity of all proceedings connected with the *assessment notice*, equalization, levies, advertisement, and sale of the property therein described, and the burden of showing any irregularity in any of the proceedings, resulting in the sale of property for the nonpayment of delinquent taxes, shall be on him who asserts it. * * *" (Italics added.)

When the foregoing provisions were incorporated into Revised Statutes of Utah, 1933, as part of Section 80-10-35,

the italicized words "herein provided for" were deleted and the word "when" and the phrase "and delivered to the purchaser" were also deleted; and between the words "assessment" and "notice" a comma was inserted to read, "assessment, notice." Chapter 101, Laws of Utah 1939, Section 80-10-35, R. S. U. 1933, was amended so that no certificates of sale are issuable in tax sale proceedings conducted after September 1, 1939. The amended section now reads as follows:

"A copy of the record of any tax sale duly certified by the official custodian of such record at the time of the certificate under the seal of his office as a true copy of the entry in the official record showing such sale is prima facie evidence of *the facts therein shown, and* the regularity of all proceedings connected with the assessment, valuation, notice, equalization, levies, *tax notices*, advertisement and sale of the property therein described, and the burden of showing any irregularity in any of the proceedings resulting in the sale of property for the nonpayment of delinquent taxes shall be on him who asserts it." (Italics added.)

The words italicized were inserted in the 1939 amendment. Although the 1921 statute does not by literal construction make the tax sale certificate prima facie evidence of the regularity of all proceedings connected with the assessment or the issuance of the tax notices, and while the statute as modified in Section 80-10-35, R. S. U. 1933, does not mention "tax notices," it is reasonably clear that the purpose of these statutory provisions is to make a tax sale certificate which is executed in conformity with the requirements of the statutes, prima facie evidence of the regularity of all proceedings leading up to the issuance thereof. The certificate of sale must properly describe the property and the taxes (by naming the year for which levied) for the non-payment of which the sale took place, before it can be used as evidence of the regularity of such prior steps and proceedings. *Brink* v. *Dann,* 33 S. D. 81, 144 N. W. 734, 738.

Any certificate duly authenticated by an officer authorized to issue the same is generally admissible in evidence

as the certificate issued by such officer. Whether or not such certificate may be used as evidence of the acts of such officer or of other officers which occurred ▇ prior to issuance of such certificate, depends upon the language of the statute which authorizes its use as evidence. Sec. 80-10-35, R. S. U. 1933, authorizes the use of a tax sale certificate as prima facie evidence of the regularity of all proceedings leading up to its issuance only if in substance and content the certificate conforms with the requirements of such statute. It is not admissible as prima facie evidence of those prior proceedings if it is incomplete or otherwise wanting in essential recitals or averments.

An inadequate and ambiguous description of the property contained in the tax sale certificate as found in *Burton* v. *Hoover*, 93 Utah 498, 74 P. 2d 652, or a failure to properly designate the tax and the year in which levied as in this case, constitutes such failure to conform with ■ the requirements of the aforesaid statute as to deny the use of such certificate as prima facie evidence of the regularity of any of the prior proceedings. In this case, because of incompleteness and lack of conformity with the requirements of the statute under which they were offered, the tax sale certificates were improperly admitted as proof of the regularity and validity of the steps leading up to the issuance of such certificates.

3.   Plaintiff introduced the assessment rolls and other evidence for the purpose of showing that the auditor's affidavits were not attached to the assessment rolls as required by the statutes, C. L. 1917, Sec. 5982 and 6006, and R. S. U. 1933, Sec. 80-7-9 and 80-8-7. Plaintiff contends that the assessment rolls were not authenticated and that the affidavits were necessary to show that the corrections had been officially made and to serve as a warrant to the treasurer to proceed to collect the taxes as shown on the corrected assessment rolls or tax rolls. Respondents cite Sec. 5910, C. L. Utah 1917, R. S. U. 1933, Sec. 80-5-30, which requires the assessor to complete his

assessment book on or before the first Monday of May in each year and to deliver the same to the county treasurer. He is required to subscribe to an affidavit in the form set forth in the statute. After stating that the assessor shall not be paid or draw any compensation for services after the first Monday in May of each year until said affidavit is made and subscribed, the concluding sentence of said section specifies:

"A failure to make or subscribe such affidavit, or any affidavit, will not in any manner affect the validity of the assessment.

The same provision appears in Sec. 2547, C. L. Utah 1907, and Sec. 2547, R. S. U. 1898. It does not appear to refer to any officer except the assessor.

Appellant concedes that the failure of the assessor to attach his affidavit is not a fatal defect because of the above-quoted statutory provision; but he contends that because there is no curative provision in the statutes for failure of the auditor to verify the correctness of the assessment roll, such defect is a fatal omission.

When the assessor completes his work, the assessment roll is still subject to correction and modification by the county board of equalization, and by the State Tax Commission. The taxpayer is not yet bound by any valuations or computations, so that the assessor's affidavit does not purpost to certify that the assessment roll is in final form. After the board of equalization has completed its changes and corrections, which the auditor is required to enter, and after the auditor has made such changes, if any, ordered by the State Tax Commission, the assessment roll then becomes the final and completed tax roll if the auditor has performed his work pursuant to law.

When the auditor finally delivers the assessment roll to the treasurer, it is required to be correct and complete, and Sec. 80-8-7, R. S. U. 1933 (Sec. 6006, C. L. U. 1917), requires the assessment roll as corrected to be verified by the auditor. The auditor must declare under oath that he has corrected it and has made it conform to the

requirements of the county board of equalization and the State Tax Commission, and that the respective sums due as taxes have been computed and that he has added up the column of valuations, taxes, and acreage as required by law. See Sec. 2606, R. S. U. 1898, and C. L. U. 1907. When the assessment roll is thus delivered to the treasurer with the final auditor's affidavit of authentication, the auditor certifies the same as the tax roll to the treasurer and to the public that the assessment roll as the official tax roll is complete and correct. The aforesaid affidavit is one of the statutory functions of the county auditor, and such affidavit must be executed and properly attached. The property owner is entitled to rely on such verification and the treasurer is bound thereby and he is required to proceed to issue the tax notices in accordance therewith, and to collect the taxes based on the computations of the auditor. The final affidavit of the auditor thus becomes highly important, and in the absence of any curative provision in the statutes for failure of the auditor to subscribe to and attach such certificate of authentication in affidavit form, the requirement of the statute must be observed.

Sections 80-7-1, 2, 3, 4, 5, 6, 9 and 80-8-1, 3, 4, 5, 6, 7, 8, 9, 10, R. S. U. 1933, are substantially the same as Sections 3672, 3673, 3674, 3675, 3676, 3677, 3682 and 3727, 3728, 3729, 3730, 3731, 3732, 3734, 3735 and 3736, of Deerings Political Code of California 1915. In *Miller* v. *Kern County*, 137 Cal. 516, 70 P. 549, 552, the Supreme Court of California distinguished between the effect of failure of the assessor to attach his affidavit and the failure of the auditor to attach his affidavit as required by statute:

"* * * The section, however, provides that 'the failure to take or subscribe such an affidavit, or any affidavit, will not in any manner affect the validity of the assessment.' No such provision is found in the sections already noticed [relating to the clerk and auditor], and the implication is strong that the legislature intended to make the requirements of those sections an essential part of the assessment book as finally completed, and as delivered to the tax collector. It is not reasonable to suppose that the legislature intended that the assess-

ment book should be placed in the hands of the tax collector without any authentication whatever. * * * It may be that the clerk made the affidavit after he had delivered the assessment book to the auditor, the same or the next day; and it may be the auditor made the affidavit required of him after he delivered the assessment book to the tax collector. Possibly the defendant can show a sufficient compliance with the law in these particulars. * * *"

In the second appeal of said case, 150 Cal. 797, 90 P. 119, the court called attention to the fact that the auditor's affidavit was executed, but it was executed subsequent to the date when it should have been delivered. The court held that the making and attaching of the affidavits to the assessment book is for the purpose of authentication, but the mere failure to attach such affidavits within the time specified does not invalidate the assessment book. The court cited a statute which is identical in wording with Section 80-11-7, R. S. U. 1933, C. L. Utah 1917, Section 6087, C. L. Utah 1907, Sec. 2677, R. S. U. 1898, Sec. 2677. In *Moyer* v. *Wilson*, 166 Cal. 261, 135 P. 1125, the court declared that no authority was presented to justify overthrowing its decision in *Miller* v. *Kern County*, supra; that the annexing of the affidavit by the county auditor is essential to the validity of proceedings to enforce payment of the tax. In *Brady* v. *Davis*, 168 Cal. 259, 142 P. 45, 46, the court held that the mere fact that the auditor actually did the things required to be done to the assessment book was immaterial if he failed to attach the required affidavit. On the authority of *Moyer* v. *Wilson*, supra, the court declared:

The actual annexing of the affidavit is essential to the validity of the proceedings, and such annexing must be made at least prior to the making of the sale to the state."

The California court applied the same rule of construction to special taxes under municipal ordinances, in *Leonard* v. *Jaffray*, 175 Cal. 371, 165 P. 956, 957, declaring:

"* * * Neither the prima facie evidence of the regularity of the antecedent proceedings furnished by the deed to the city nor the cura-

tive clause of the ordinance relating to informalities is available against the clear showing that the clerk failed to authenticate the corrected roll as required by the ordinance. * * *"

In this case appellant also contends that the first auditor's affidavit, required by Sec. 80-7-9 to be attached to the corrected assessment roll was never annexed thereto nor ever executed. Respondents contend that it is merely for the benefit of the treasurer and not the taxpayer. We think the purpose of the original authentication is at least in part for the benefit of the taxpayer. The affidavit reads:

"I, . . . . . . . . . . . . . . ., do swear that, as county auditor of . . . . . . . . . . . . county, I have kept correct minutes of all acts of the county board of equalization touching alterations in the assessment book, that all alterations agreed to or directed to be made have been made and entered in the book, and that no changes or alterations have been made therein except those authorized."

By Section 80-7-8 the auditor is made ex officio the clerk of the Board of Equalization. The taxpayer is the one who is entitled to the assurance that the clerk of the board has made all the alterations in the assessment ordered to be made by the board and no others. One purpose for which the book in which such changes, corrections and orders are required by Sec. 80-7-9 to be kept is to enable the taxpayer to have means of information of what has been done by the Board of Equalization. Thus, both the first and second affidavits of the auditor were designed to give assurance that the entries in the assessment book are correct and authentic. Moreover, the statutes expressly require that the affidavits of authentication be made. Failure to execute and attach such affidavits certainly is not a mere "informality" within the meaning of Sec. 80-11-7, R. S. U. 1933. The Legislature evidently thought that the affidavits are of sufficient importance to insert a special provision in the statutes, Sec. 80-5-30, in order that the failure of the assessor to attach his affidavit would not invalidate the assessment.

Respondents further contend that the auditor cannot be required to execute the final affidavit provided by Sec. 80-8-7 for the reason that he would actually commit perjury by swearing that he received the assessment roll from the assessor when it actually is delivered to him by the treasurer. The assessor delivers the assessment books to the auditor via the treasurer, who prior to their delivery to the auditor to make the final corrections and to compute the taxes, issues valuation notices and other records. It might be preferable from the standpoint of precision and detail for the auditor to state that he received the assessment rolls from the assessor by way of the treasurer. However, we are unable to see how the failure of the statute to require the auditor to recite all of the details of manual delivery of the assessment rolls prepared by the assessor, could operate to excuse the auditor from authenticating the assessment rolls and verifying their correctness and completeness.

It is pointed out by respondents, however, that the trial court made a finding to the effect that the auditor's affidavit was attached to the roll at the time is was delivered to the treasurer, and they contend that such finding has ample support in the evidence. The reasoning for such contention is as follows: The certificate of tax sale being prima facie proof of the regularity of all proceedings leading up to its issuance, appellant had the burden of showing that the affidavit was not attached at the time the roll was delivered to the treasurer. The only evidence which might tend to so show was that introduced by the appellant to the effect that at the time of trial no such affidavit was attached; and that such evidence is insufficient to show that it had not theretofore been affixed to the roll. Since we hold that the tax sale certificates introduced were not such as to make them prima facie evidence, and the burden of showing the regularity of the proceedings leading to their issuance remained with respondents, the argument loses all of its force. Respondent

failed to produce evidence that the affidavit was ever attached. The evidence showing that it was not affixed at the time of trial is certainly not such as to justify an inference that it was affixed at some earlier date.

From what has been said above it is apparent that the defendents did not establish a good title from the county. A number of other questions were raised by the parties but we deem it unnecessary to consider them because we believe the answer to the three questions above will control not only in this appeal but in the determination of a retrial. If by any chance on retrial the defendants can furnish evidence that the auditor's affidavit was affixed to the assessment book, other questions may arise. In such case, it will be better to permit the trial court to rule upon them and for us to pass upon them on another appeal if necessary instead of considering them now on the bare possibility that they may again arise in this case.

The judgment of the court is reversed and the cause is remanded, with instructions to grant a new trial. It is so ordered. Costs to appellant.

WOLFE, C. J., and MOFFAT, J., concur.

LARSON, Justice (dissenting).

I dissent. I concur in that part of the opinion holding that mineral rights and surface rights need not be separately taxed and sold when ownership of both reside in the same person. My reasons for so holding are set forth in the opinion in this case on the former hearing, reported in 106 P. 2d 163, 104 Utah 505. I dissent from what is said in the prevailing opinion of Mr. Justice McDONOUGH as to points 2 and 3 with respect to the tax sale certificates and the auditor's authentication of the assessment roll. It seems to me the court is turning the clock of judicial interpretation and of legislative enactments back several decades to the rule announced in *Asper* v. *Moon,* 24 Utah 241, 67 P. 409, unmindful and oblivious of the fact that such decision was rendered under a statute materially different from those

which control today. *Hatch* v. *Edwards*, 72 Utah 113, 269 P. 138. It seems the inevitable result of the prevailing opinion will be that any one assaulting a tax title, or a tax sale need only come in and utter the famed pugilistic yell, "we've been robbed" to have the proceedings set aside and the sale nullified. I always thought is was elemental that a plaintiff, in a tax sale suit as well as in any other action at law, is only entitled to recover when a wrong has been done him, against which he seeks redress; and can recover only for the things wherein he has been wronged. Plaintiff here was not the tax title claimant, nor was he the owner of the property involved, at the time or before the tax sale, the auditor's tax deed or the private sale by the county. He claimed under a quitclaim deed from the Union Pacific Railroad Company, the record owner at the time of the tax levy and the sale proceedings. He then instituted this action against the defendants, purchasers from the county. The only issue is whether plaintiff, or the party from whom he claims title was deprived of title to the property by the errors of tax officials which are pointed out and made an issue. Since the opinion resolves point 1 against plaintiff, that the assignment was properly made, and there is no claim that there was any error in the levy, noticing advertisement or sale for delinquency, and it is admitted the taxes were never paid or tendered, and no redemption was ever made or offered, I cannot see where there is any issue before the court. The other matters discussed in the opinion have to do with alleged informalities on the face of certain instruments. No claim is made that any of the proceedings were irregular or invalid, but merely that certain recitals in some records are surplusage and incomplete. It is not contended, however, that the proper acts were not all properly performed nor that plaintiff or the party from whom he claimed were or could be in any way misled, harmed, or prejudiced by the seeming defects in the record of which complaint is made. While he does not question the validity of the tax or any of the proceedings connected

therewith, he has not offered to pay them, nor to redeem from the sale, nor does he now offer or desire to do so. Not having offered, and not now offering to do so, should he be heard to complain that he should have the privilige while still asserting he would not avail himself of it. *Deseret Irr. Co.* v. *Bishop*, 92 Utah 220, 67 P. 2d 210.

Plaintiff now contends, and the opinion holds that the tax title fails because (a) the recitals in the certificate of sale do not show the year for which the sale was made. Assuming for the argument that such defects would render void the certificate of sale, it does not help the cause of plaintiff. The certificate of sale is not jurisdictional — neither the right to sell nor the conveyance of title is dependent upon the certificate. *Bruno* v. *Madison,* 38 Utah 485, 113 P. 1030, Ann. Cas. 1913B, 584; *Armstrong* v. *Jarron,* 21 Idaho 747, 125 P. 170; *Bacon* v. *Rice,* 14 Idaho 107, 93 P. 511. The tax sale is made by the treasurer when the tax remains delinquent and unpaid at sale day. Conceding the regularity of proceedings up to that point, that sale as and when made places the owner from that moment forth as limited to the right of redemption. He has no interest in the certificate of sale; it can confer no rights on him; it is given to the county and filed in the county recorder's office as notice to all the world that the property has been sold for taxes, and any one acquiring an interest therein through the owner takes subject to the county's claims. Furthermore it is reasonably clear that the certificate of sale is not intended as the only evidence of the sale. The treasurer must make and keep in his office a record of sales, showing a description of the property, the amount of taxes and costs, and other proceedings incident to the collection of taxes and sale for nonpayment. R. S. U. 1933, Sec. 80-10-33. The certificate of sale is a copy or memorandum of sale filed with the recorder to give notice to the world. Should there be a discrepancy between the Record of Sales and the recitals in the certificate the record of sale will control. *Bruno* v. *Madison,* supra; *Clark* v. *Thompson,* 37

Iowa 536; *Kneeland* v. *Hull*, 116 Mich. 55, 74 N. W. 300. Other states under statutes like ours have held in accordance with these views. See *Otoe County* v. *Brown*, 16 Neb. 394, 20 N. W. 274; Id., 16 Neb. 398, 20 N. W. 641. The Supreme Court of Michigan in *Muirhead* v. *Sands*, 111 Mich. 487, 491, 69 N. W. 826, 828, held that the "owner cannot be concerned as to the form of the certificate given to the purchaser, nor would it be material if no certificate was given at all." And under a statute similar to ours, the Oklahoma court in *Pentecost* v. *Stiles*, 5 Okl. 500, 49 P. 921, 923, held "the tax sale, so far as the owner of the property is concerned, may be as valid without this certificate as with it." The certificate of sale is not a muniment of title. The legal title is divested and the property conveyed to the county by the auditor's tax deed at the end of the redemption period, and by the express provisions of the statute that deed is made prima facie evidence of the regularity of all matters therein recited. Sec. 80-10-66, R. S. U. 1933, being Sections 6030 and 6055 C. L. U. 1917, including the fact that a certificate of sale had been issued, which issuance is prima facie evidence of the regularity of all proceedings up to that time. Sec. 80-10-35, R. S. U. 1933. The certificate of sale involved in this case was very substantially in the form prescribed by the statute, Sec. 80-10-35, R. S. U. 1933, being Sec. 6021, Laws of Utah, 1921, p. 382, which section further makes the certificate prima facie evidence of the regularity of all proceedings connected with the assessment, notice, equalization, levies, advertisement and sale of the property, and the burden of showing an irregularity in the proceedings resulting in the sale is upon him who asserts it. *Wilson* v. *Locke*, 18 Idaho 582, 111 P. 247, *McGowan* v. *Elder*, 19 Idaho 153, 113 P. 102. No attempt was made by plaintiff to show any irregularity in any of the proceedings leading up to and resulting in the sale, nor is it claimed there were any such. *So the fact that a certificate was issued* establishes prima facie the regularity of all proceedings up to and including the sale.

Plaintiff argues that the recital in the certificate is prima facie evidence that the land was improperly assessed for city taxes, but the statute does not so provide. It does not make the certificate evidence of any recitals therein, but makes it prima facie evidence of the *regularity* of prior proceedings, that is of the assessment, levies, and even notices and equalization which are not recited therein; and the *burden of showing irregularities* is on him who asserts it. This cannot be shown or inferred from recitals in the certificate. This will appear more conclusively from what is said in the discussion of the next question.

Is the auditor's tax deed void because it contains recitals that the certificate shows the land was sold for taxes for 1932, when the certificate does not show which year; and also that the certificate contains a recital that the property was assessed and sold, for city and city school taxes to which it is not subject, along with other taxes to which it was subject? Sec. 80-10-66 provides that the auditor's tax deed is prima facie evidence of the facts *"recited therein."* Herein it differs from the certificate of sale, which is not evidence of the things therein recited, but of certain facts enumerated by the statute. Sec. 80-10-35. These sections, 80-10-35 and 80-10-66, are rules of evidence and provide that the issuance of a certificate of sale and the recitals in the deed shall be prima facie evidence of the matters indicated by the statute. No further proof is required from the person relying upon the tax sale or title to show the regularity of all proceedings up to and including the sale than the fact that the certificate of sale was issued. So no further proof is required of such person, as to any matters recited in the auditor's deed, than the deed itself. While such matters are established prima facie by the evidence indicated, it is not the only evidence and may be rebutted. So, although the deed contained a recital that the lands were assessed for city and city school taxes, such recital was rebutted by the evidence adduced by plaintiff himself when he put in evidence as part of his case in

chief Exhibits D, G, and F, being the assessment, apportionment by the State Tax Commission, the County Assessment Roll, and the County Tax Computation on this property, respectively showing it was not assessed as within any city or town, and that no city or city school or town tax was figured or computed or levied against it. So when plaintiff himself resorted to the records, put them in evidence over defendants' objections, and thus conclusively showed that the lands were not assessed for city and city school taxes; and upon the evidence so put in by him, the court found the lands were not so assessed—plaintiff cannot now avail himself of such erroneous recital in the instrument. There is no claim that there was any irregularity in any of the proceedings, but only that the instruments (the certificate and deed), are void for surplusage in their contents. All the tax proceedings being valid, the property having been sold, and the redemption period having expired, plaintiff is simply out. *White Pine Mfg. Co.* v. *Morey,* 19 Idaho 49, 112 P. 674. ·

But there is another conclusive reason why plaintiff should fail in this action. Even assuming the case most favorable to plaintiff, to wit; that there are informalities and irregularities in the certificate of sale and in the auditor's tax deed, and also assuming that the lands were overtaxed because some city and city school taxes had been added into the aggregate amount of tax, there are statutory provisions governing the question. Sec. 80-11-7, R. S. U. 1933, reads:

"*No* assessment or *act relating to* assessment or *collection of taxes* is illegal on account of informality or because the same was not completed within the time required by law." (Italics added.)

And Sec. 80-10-38 provides:

"Whenever property is sold for the nonpayment of delinquent taxes, and the assessment *is valid in part and void as to excess,* the sale must not for that cause be deemed invalid, nor shall any grant subsequently made thereunder be held insufficient to pass a title to the grantee, unless the owner of the property or his agent, not less than six days

before the time at which the property is advertised to be sold, delivers to the treasurer a protest in writing signed by the owner or agent, specifying the portion of the tax which he claims to be invalid, and the ground upon which such claim is based." (Italics added.)

If therefore there was charged against this property an excess tax (city and city school) that does not affect the validity of the sale or defendants' title, plaintiff not having complied with or made any effort to comply with the last-quoted section. This is in keeping with the past decisions of this court. As pointed out by Mr. Justice Cherry, speaking for the court in *Hatch* v. *Edwards,* 72 Utah 113, 269 P. 138, the statutes now in force are materially different from those which controlled in *Wall* v. *Kaighn,* 45 Utah 244, 144 P. 1100; *Lawrence* v. *Murphy,* 45 Utah 572, 147 P. 903; and *Thompson* v. *Taylor,* 61 Utah 164, 211 P. 696; *Fisher* v. *Davis,* 77 Utah 81, 291 P. 493; *Asper* v. *Moon,* 24 Utah 241, 67 P. 409; the cases of *Moon* v. *Salt Lake County,* 27 Utah 435, 76 P. 222; *Jungk* v. *Snyder,* 28 Utah 1, 78 P. 168; *Olsen* v. *Bagley,* 10 Utah 492, 37 P. 739; *Tintic Undine Mining Co.* v. *Ercanbrack,* 93 Utah 561, 74 P. 2d 1184; *Burton* v. *Hoover,* 93 Utah 498, 74 P. 652, were all cases where the errors were made in the assessment and the attack was directed at the assessment and levy, not the form of the instruments executed. Even in Wall v. Kaighn and the case following it, under the old statute the attack was made on the sale or proceeding prior thereto, and the deeds were merely used as evidentiary of the proceedings which had been taken at or prior to the sale under the statute that the recitals in a *deed* are prima facie evidence of the things therein recited. I know of no case which has held a tax sale void merely because of informalities or irregularities in the auditor's tax deed.

Now to consider plaintiff's point 3 (c) ; that the sale and tax proceedings must fail because of the claimed failure of the auditor to attach to the assessment roll an affidavit as required by Section 80-8-7, R. S. U. 1933.

It is argued that such section must be literally complied with or the assessment and all subsequent proceedings are utterly void. It has even been held that a variance in the wording of the affidavit is fatal. In *Richardson* v. *Howard,* 23 S. D. 86, 120 N. W. 768, 769, it is held that the assessment and all proceedings fail because the affidavit there subscribed used the words "full and true value" while the statutory form reads "full and true *cash* value." Laws 1899, c. 40, p. 38, § 3. And in *Friedner* v. *Galveston,* Tex. Civ. App., 229 S. W. 950, the assessor had signed the statutory form of certification, but it lacked the seal of the notary. Under such rule what would happen in this state where the statutory form of affidavit requires the auditor to *swear in affidavit form* that "I received the accompanying assessment roll * * * *from the assessor"?* Section 80-5-30 requires the assessor to deliver the rolls to the county treasurer. Section 80-10-12 requires the treasurer to deliver the book to the auditor. If therefore the auditor must swear he received them from the *assessor* he would be required to swear to a *false affidavit* and commit perjury. *United States* v. *Klink,* D. C., 3 F. Supp. 208. And under the cases referred to above the affidavit must be in the exact language of the statute or it has no validity. It certainly never was the intention of the Legislature to make the validity of tax proceedings depend upon a *false affidavit.* The section under discussion, 80-8-7, is listed among the "County Auditors' Duties." There is no statute providing that the failure of the auditor to swear to the affidavit (which would be false in form and substance) shall nullify any assessment or other proceeding. But Section 80-5-30 is very significant in this connection. It provides that the assessor must make and subscribe an affidavit to the assessment roll as therein set forth. It then provides that he shall not be paid or draw any compensation until the affidavit is subscribed. The statute then reads:

"A failure to make or subscribe such affidavit, *or any affidavit,* will not in any manner affect the validity of the assessment." (Italics added.)

The statement *"or any affidavit,"* certainly cannot refer to affidavits by the assessor because there is no provision for the assessor making any affidavit other than the one provided in the section itself. Clearly it must refer to other affidavits required by law to be made relative to the tax rolls and records, because it states that the failure to make *any* affidavit "will not in any manner affect the validity of the assessment." Note also that the auditor is required to make another affidavit as to the correctness of the assessment roll after equalization has been had, which however is not attached to the roll. Section 80-7-9, R. S. U. 1933. It would seem, however, it might be evidence of the correctness and authenticity of the figures on the rolls.

We have a statute, Section 80-11-7, R. S. S. 1933, providing that "no assessment or act relating to assessment or collection of taxes is illegal on account of informality or because the same was not completed" in time. Idaho has sections like our 80-8-7 and our 80-11-7, which have been construed by the Supreme Court of that state a number of times. In the case of *Stewart* v. *White,* 19 Idaho 60, 112 P. 677, 678, the Idaho court followed the rule announced in Bacon v. Rice, and cited the case of *Couts* v. *Cornell,* 147 Cal. 560, 82 P. 194, 109 Am. St. Rep. 168, and said:

"It was held, in effect, * * * that there is an enforceable obligation to pay a general annual tax, which in a sense is legal as well as moral; and a lien therefor is established by law irrespective of the irregularities or informalities of the assessment. Even if there were some informalities in the assessment or collection of the taxes upon said land, those were all cured by the provisions of section 1788, Rev. Codes, which section is as follows: 'No assessment, or act relating to assessment, or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law.' "

And in *Armstrong* v. *Jarron,* supra, 21 Idaho 747, 125 P. 174, the same court said:

"In finding No. 5 the court finds that the assessor of said county failed to append the certificate required by section 1727 of the Rev.

Codes or any certificate of any kind whatsoever. Section 1727, Rev. Codes, provides: 'On or before the first day of July in each year the assessor must complete his assessment roll. He and his deputies must take and subscribe an affidavit in the assessment book, to be substantially as follows.' Then follows the oath in which the assessor or his deputy verifies that he has made diligent inquiry and examination to ascertain all the property within the county subject to assessment, and that the same has been listed and assessed on the assessment book equally and uniformly, and that he has complied with the duties imposed upon him by law. This section is directory and not mandatory and is required for the purpose of making the assessment roll as made by the assessor verify itself as to the truth of the things contained in it, and for the purpose of showing that the assessor has performed his duties. In said section it is provided: 'But the failure to take or subscribe such affidavit as required by this section shall not in any manner affect the validity of the assessment. The making of such affidavit is declared, however, to be a duty pertaining to the office of every assessor in this state'—thus showing the intention of the legislature to be that the failure to make the affidavit should not affect the validity of the assessment made by the assessor, but would subject the assessor to certain proceedings for failure to perform his official duties. J. R. Lydon, present clerk of the district court and ex officio auditor and recorder, and who held the same office in 1906, testifies that the affidavit required by sections 1724 and 1727 was not appended to the assessment at the time the assessment book was delivered to the tax collector, but was attached on the 7th day of March, 1911. It was an oversight. He had done it on all previous assessment rolls. This finding of the trial court, therefore, would in no way affect the validity of the tax sale or the tax deed or the appellant's title."

In the case of *McGowan* v. *Elder,* 19 Idaho 153, 113 P. 102, this court announces the rule of law in the syllabus, as follows:

"Where property is the subject of taxation, and the assessment has been legally made, and there is a default in the payment of such taxes, and the property is sold at tax sale in accordance with the provisions of the statute, such property cannot thereafter escape taxation through some failure of the officer to perform his duty, unless it has actually misled the party to his injury.

And in *White Pine Mfg. Co.* v. *Morey,* supra, 19 Idaho 49, 112 P. 675, the court says:

"It has been accordingly held that not all the provisions of the statute with reference to the assessment of property and the sale for taxes are mandatory, but that on the contrary some of those provisions are only directory. * * *

"On the other hand, as above observed, the later authorities are overwhelming to the effect that if the proceeding has been regular and a tax sale has been made in substantial conformity with law that the time within which the landowner may redeem is fixed and limited by the statute, and that after the expiration of such period he has no right of redemption, whether a deed has issued or not."

The Oklahoma Court in *Re Rolater et al.*, 67 Okl. 215, 170 P. 507, 508, says:

"The failure of the assessor to verify the assessment roll was not such an irregularity as to render the assessment void. In the case of the Board of Commissioners [of Garfield County] v. Field [63 Okl. 80], 162 P. 733, this contention was made, and Mr. Justice Hardy, in delivering the opinion of the court said:

" 'And if in fact the affidavit required by said section were not attached to the assessment roll, the failure of the assessor to make said affidavit and attach it would not render the tax illegal nor entitle the plaintiff to any relief in this proceeding. The requirement in this regard is directory, and the failure upon the part of the assessor to attach said oath to the assessment roll is an irregularity merely, and will not defeat the tax in a collateral proceeding.'

"It is urged by counsel that the instant case does not fall within the rule announced in that case, for the reason this is an appeal, a direct proceeding, and that was an injunction suit, a collateral proceeding. The language, 'and will not defeat the tax in a collateral proceeding' is merely an application of the conclusion that the requirement is directory to the facts of that case."

Other cases holding the absence of the oath is a mere irregularity and does not vitiate the roll are *Wallapai Mining & Development Co.* v. *Territory*, 9 Ariz. 373, 84 P. 85; *Equalization Board* v. *Land Owners*, 51 Ark. 516, 11 S. W. 822; *Chesnut* v. *Elliott*, 61 Miss. 569; *State ex rel. Howard* v. *Timbrook's Estate*, 240 Mo. 226, 144 S. W. 843; *Spiech* v. *Tierney*, 56 Neb. 514, 76 N. W. 1090; *Merriam* v. *Dovey*, 25 Neb. 618, 41 N. W. 550; *Odiorne* v. *Rand*, 59 N. H. 504; *Board of Commissioners* v. *Field*, 63 Okl. 80, 162 P. 733;

*Avant* v. *Flynn,* 2 S. D. 153, 49 N. W. 15; *In re Rolater,* supra. I think the better policy and reasoning are that the statute requiring the auditor's oath is merely directory, and not mandatory.

There is another reason why I must disagree with my associates. Under our statute the certificate and auditor's deed are prima facie evidence of the matters as pointed out above, and the burden is upon the person who assails them to prove the defects. When defendants here put in evidence the certificate and deed they made their case unless the plaintiff could show irreguluarities to upset the title. To show there was no valid assessment, he must prove that fact. He did not sustain that burden. He rested content upon the single statement by Mrs. Oberto, the present treasurer, that on the day of her testimony, October 3, 1938, there was no such affidavit attached to the assessment roll for 1932. No effort was made to show there had been no such affidavit attached nor to show the affidavit was not on file at that very time in the office. As against the presumptions declared by the law the court could well have found, as it did find, that the rolls had been properly verified in 1932. But before this question was asked and answered, plaintiff as proof of certain other facts essential to his claims, had put in evidence over defendants' objections the assessment roll covering these lands and the tax computations upon them for 1932, the year in question; and even after the question now under consideration was before the court and the witness had answered as indicated above, plaintiff had Mrs. Oberto testify from the rolls and submit computations based upon them, which evidence was in support of other allegations and claims to sustain his case, and not designed to disprove the presumption of a valid assessment. The evidence a party puts in the record may conclude him and he cannot be heard, as is apparent here, to put the tax rolls in evidence as a valid assessment to show an auditor's deed and certificate of sale invalid, because of a claimed departure from the assessment, and

failing in that shift to the position that the roll is not competent evidence of an assessment having been made.

What then is the purpose of the affidavit required of the auditor? What is the purpose of any oath of verification? Clearly to make the record prove itself. Such affidavit establishes the genuineness of the record without other proof. It is like an acknowledgment on a deed or other instrument required for recordation. But the absence of a notary's acknowledgment on a deed does not vitiate the deed. It merely necessitates other proof of its genuineness. So with these statutory oaths of officers to public records. They are verifications which prove the instrument, and establish their prima facie accuracy. If one had need to resort to the assessment roll to prove a fact shown thereby and the roll was not verified, it may be the roll would not become competent evidence. Like the record of an unacknowledged deed or mortgage, not being verified so as to entitle it to recordation, it perhaps imparts no notice, but as between the parties concerned it is effective. Since however the regularity of tax proceedings is assumed or proved prima facie by the fact of a sale and auditor's deed, and the burden of disproving any irregularity is upon the person assailing the tax proceedings, lack of verification of records would militate against the attacker rather than the holder of the tax title. If the tax title claimant, as was our rule at the time of Wall v. Kaighn and other early cases, had the burden of proving the validity of all tax steps, so he must rely on the record and not the presumption set up for him by the statute, the absence of the auditor's affidavit to the roll might affect him. I will note the cases seeming contra although no cases on the point are cited in the prevailing opinion. In California at the time the cases of *Miller* v. *Kern County,* 137 Cal. 516, 70 P. 549, was decided the burden was upon the tax title claimant to prove by the record the regularity of all proceedings commencing with the assessment and ending with the deed to the purchaser from the county, and any defect in those

proceedings vitiated the sale. In the Miller case the matter came up on demurrer. The complaint alleged that the assessment roll was not verified as required by law. The demurrer admitting such fact, the court in effect held that the unverified roll would not be evidence and the claimant therefore could not prove an assessment. To the same effect is *Henderson* v. *Ward*, 21 Cal. App. 520, 132 P. 470, wherein the trial court found the roll was not verified and therefore could not be used as evidence. The appellate court affirmed. Exactly the same is *Moyer* v. *Wilson*, 166 Cal. 261, 135 P. 1125. In *Brady* v. *Davis*, 168 Cal. 259, 142 P. 45, the validity of the assessment was challenged. The tax title claimant, who had to rely on the record, admitted the roll had not been verified, so it was not admissible as evidence of an assessment. *Leonard* v. *Jaffray*, 175 Cal. 371, 165 P. 956, merely upholds the finding that there was no affidavit; the evidence not being shown. *Brewer* v. *Kulien*, 42 Wyo. 314, 294 P. 777; and *Sidlo, Simons, Day & Co.* v. *Phillips*, 48 Wyo. 390, 49 P. 2d 243, are cited. Wyoming follows the rule that the tax title claimant has the burden of proving by the record the validity of every step in the tax proceeding. The evidence was conclusive, the officer testifying he had never verified the rolls. They therefore could not be used as evidence to prove the assessment. The Texas cases cited, as shown by *Friedner* v. *Galveston*, supra, follow the same rule. That was a case in which the city sued for a tax. The question was: Does the unverified roll constitute proper evidence of a valid assessment? The court held that the burden was on the party who brought the suit to enforce a tax to prove its validity and he could not use the unverified roll as evidence. The cases from South Dakota, New York, Wisconsin, Iowa, Missouri, and Michigan, are all cases in which the person having the burden of proof sought to make the proof by the record, and the holdings are to the effect that the unverified roll cannot be used as evidence. In *United States* v. *Klink*, D. C., 3 F. Supp. 208, the court did not express its views on the question simply stating the

decision of the Wyoming Supreme Court was binding on it and so it followed the Brewer v. Kulien case. *As far as I have been able to check the cases, I have found none under statutory provisions like we now have and cited supra; holding the absence of any affidavit voids a tax sale.* But as indicated above, where the rule prevails that matters must be proved by the records, many courts hold that the party who has the burden of making proof by the records cannot make it by unverified records. Thus the cases using the word "jurisdiction" are all cases in which the validity is not presumed as in this state, but proof must be made of every step by the records, and the holdings are simply in effect that it cannot be proved by an unverified record, and therefore when one who must supply the proof produces an unverified record which is not competent evidence he admits there is no evidence to warrant the sale. Under our statutes the validity is presumed and proved prima facie by the fact of a certificate of sale and issuance of an auditor's tax deed.

One further comment seems in order. As to those cases cited by Justice McDONOUGH—they seem to be answered by the Supreme Court of California in the second appeal in *Miller* v. *Kern County,* 150 Cal. 797, 90 P. 119, 121, wherein the court held that such *affidavits may be supplied after all tax proceedings are had* up to delinquency, and that when the record is finally verified that is sufficient *in the absence of a showing of proof of injury because of lack of verification.* The court there says:

"The making and attaching of these affidavits to the assessment book is required, as stated by this court upon the former appeal, for the purpose of authentication. They are 'acts relating to the assessment or collection of taxes,' beyond doubt. Section 3885 of the Political Code is as follows: 'No assessment or act relating to assessment or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law.' There was not an entire failure to perform the acts of making and affixing the affidavits. They were properly made and affixed, but not within the time specified in the Code. *No injury was caused, and we cannot*

*see that any injury could be caused by the delay.* By the express language of section 3885 the delay did not make the affidavits or the assessment in question illegal. They were lawfully made and attached, and if the assessment was previously invalid for lack of them, as had been, in effect, decided for the purposes of this case, it became valid and lawful the moment they became attached to the book on November 1, 1895. This is a reasonable doctrine, and we perceive no benefit, public or private, to be derived from holding the contrary. It is fully supported by the decisions in similar cases. Buswell v. [Board of] Supervisors, 116 Cal. [351], 354, 48 P. 226; People v. Eureka, etc., Co. 48 Cal. [143], 146; Hart v. Plum, 14 Cal. [148], 155; Payne v. San Francisco, 3 Cal. [122], 126; State v. [Northern Bell Mill &] Mining Co., 15 Nev. [385], 388; State v. Western U. T. Co., 4 Nev. [338], 344; Walker v. Edmonds, 197 Pa. [645], 647, 47 A. [867], 868; Hooker v. Bond, 118 Mich. [255], 257, 76 N. W. [404], 405; 1 Cooley on Taxation (3d Ed.) 486." (Italics added.)

See, also, *McGowan* v. *Elder,* supra.

*Bear in mind that in the case at bar no claim of injury or prejudice is made. There is no claim made that the lands were not properly assessed,* and plaintiff himself put the assessment roll in evidence to prove a proper assessment. *It is merely claimed there are informalities in certain instruments* and records. I therefore resolve this point against appellant.

The matters upon which plaintiff relies do not void defendants' title. But if they did so, plaintiff could not have his title quieted because he admits a valid assessment and tax levy against the property, its nonpayment and a sale thereof. Not having redeemed or offered to redeem, he is not entitled to have his title quieted against either the county or its assignees, the defendants. Defendants' tax title notwithstanding plaintiff's assault was properly quieted.

PRATT, J., on leave of absence.