## DOWSE v. KAMMERMAN et al.

No. 7719.   Decided July 17, 1952.   (246 P. 2d 881.)

David A. West, Salt Lake City, for appellants.

LaMar Duncan, Salt Lake City, for respondent.

WOLFE, Chief Justice.

This is an action to quiet title to Lot 7, Block 1, Holland Subdivision. The defense is based on equitable estoppel. The defendants appeal from the judgment which quieted title in the plaintiff upon payment by him of $105.57 for the taxes and a sewer assessment which the defendants or their predecessors in interest paid while in possession.

One Charles E. Pittorf acquired the fee title to the property in 1907. General taxes were paid each year until 1930. The taxes were not paid for 1930, and in due course the Treasurer of Salt Lake County executed a tax sale certificate thereon to Salt Lake County. Thereafter, general taxes were added for the years 1931 to 1935 inclusive, amounting to $49.99 in all, and under date of March 31, 1936, an Auditor's tax deed issued to Salt Lake County. In April, 1945, plaintiff purchased the tax title from Salt Lake County under authority of Section 80-10-68, U. C. A. 1943. Two months later, plaintiff and his wife conveyed by quitclaim deed to Doris Trust Company for "$10.00 and other valuable consideration." The Doris Trust Company took possession of the property and paid the general taxes thereon for the years 1946 through 1949, plus a special sewer assessment levied in 1947. In February, 1950, Doris Trust Company conveyed the premises to defendants by warranty deed. While the consideration paid by defendants for said property to Doris Trust Company is not mentioned in the agreed statement of facts, revenue stamps attached indicate a consideration of $500 to $1,000. Six

months after defendants purchased the property, plaintiff filed his complaint in this action. The flaw in the chain of title is that the Auditor's affidavit was missing from the tax assessment, and the tax sale upon which the tax deed was predicated was void as decided by this court in *Telonis* v. *Staley*, 104 Utah 537, 144 P. 2d 513, and *Equitable Life and Casualty* v. *Schoewe*, 105 Utah 569, 144 P. 2d 526.

Plaintiff was apparently aware of this defect when the title was in his hands. The record shows that Charles E. Pittorf died at Great Falls, Montana, July 12, 1912, leaving a widow and a daughter as heirs. In March, 1950 the plaintiff acquired quitclaim deeds from the widow for $25 and from the daughter for $10. Plaintiff thereafter filed a petition to probate the estate of Charles E. Pittorf and pursuant to this proceeding, a decree of distribution of the property here involved was made to the plaintiff. The Doris Trust Company having given a warranty deed to defendants, it is stipulated that counsel for the defendants is attorney for the Doris Trust Company and that

"defendants are subrogated to any and all rights, claims and interest which said Doris Trust Company has or may have as if interpleaded herein".

Thus, the actual defendant, Doris Trust Company, charges that the trial court erred in not holding that plaintiff should be estopped from asserting his present interest after he sold the tax title to the Trust Company and later purchased the record title for a nominal consideration in order to oust the defendants, Kammerman brothers.

There is no diversity of opinion to the rule that estoppel by deed operates only where the conveyance is intended to convey a particular estate, which the grantor subsequently acquires. A quitclaim deed does not raise an estoppel as to an after acquired title. Thompson on Real Property, Permanent Edition, §§ 3845, 3846; *Breen* v. *Morehead*, Tex. Civ. App., 126 S. W. 650, 655; *U. S. National Bank of La Grande* v. *Arthur Ben Miller*, 122 Or.

285, 285 P. 205, 58 A. L. R. 339; Annotation 58 A. L. R. 360. As stated in *Breen* v. *Morehead,* at page 656 of 126 S. W.:

"* * * where there is in the deed an express or implied representation that the grantor at the time of his conveyance was possessed of the title which his *deed* purports to convey, if such representation is false, whether he committed a fraud or was acting under an honest mistake, he is estopped from denying that he has a title; and, consequently, if he afterwards acquire the title, he cannot by setting it up defeat his own grant. (Citing cases.) But if the deed conveys 'all right, title, and interest' of the grantor, instead of an absolute estate, the grantor will not be estopped from setting up an after-acquired title, since he did not undertake to convey a greater interest, or better title than he then had. (Citing cases.)"

Defendant seeks to enlarge this doctrine of estoppel by deed by citing cases of equitable estoppel which he contends are in point and gives this court authority to order that title be quieted in him. In *Clyburn* v. *McLaughlin,* 106 Mo. 521, 17 S. W. 692, 27 Am. St. Rep. 369, the court held that where an owner of land which is sold for taxes, with knowledge of all the facts, accepts the surplus from the sheriff's sale, he thereby recognizes and ratifies the validity of the sale so that he is estopped from later contesting it. Quotations from the opinion which illustrate the view there adopted are as follows:

"'When a sale of land is made no person can be permitted to receive both the money and the land * * *.' To permit these plaintiffs to affirm the sale and hold the proceeds in one hand, and to reject the sale and take the land with the other, would be an encouragement of bad faith, which courts of equity will not allow."

If this court were to apply the broad equitable "clean hands doctrine" and refuse to quiet title in the plaintiff Dowse, still we could not grant defendants affirmative relief and quiet title in them without overturning the principle that an after-acquired title does not pass by a quitclaim deed.

As stated by Justice Holmes in *Ayer* v. *Philadelphia & Boston Face Brick Co.,* 159 Mass. 84, 34 N. E. 177:

"* * * the existence of the estoppel does not rest on the prevention of fraud, or on the fact of a representation actually believed to be true. It is a technical effect of a technical representation, the extent of which is determined by the scope of the words devoted to making it."

The law has not yet gone so far as to admit parol evidence to show that a quitclaim deed was intended to convey property in which the grantor orally stated that he stood lawfully seised with a good right to convey the same. The inequity of allowing the plaintiff to retain whatever purchase money he received from the Doris Trust Company and also regain possession of the land, may amount to grounds for rescission of the quitclaim deed, or it may be a basis for a suit in unjust enrichment but it does not constitute an estoppel by deed. That technical property doctrine is not to be confused with, or enlarged by the ordinary equitable estoppel.

The heirs of Charles E. Pittorf could have quieted title in themselves because of the defective tax sale. Neither they, nor a grantee of theirs, could be estopped from asserting the record title because of the fact that plaintiff informed them of their rights in the land. The Doris Trust Company presumably knew that a quitclaim deed only passes the right, title and interest which the grantor then has, Section 78-1-12, U. C. A. 1943, and that the validity of all tax titles depends upon strict compliance with the statutory procedures necessary to a tax sale.

The judgment is affirmed. Costs awarded to respondent.

McDONOUGH, Justice.

I concur. This case was submitted to the court below on the pleadings and upon a stipulation of the facts. There are no admissions in the pleadings which would in any way broaden the stipulation. The latter merely recites the dates

of the various conveyances, the state of the tax title, and the recited consideration in the deeds. As noted in the opinion of the court, the recited consideration in the deed from the plaintiff to his grantee, the Doris Trust Company, was "$10.00 and other valuable consideration". The conveyance was by quitclaim deed. There is no evidence in the record of any representation either by word or conduct upon the part of the plaintiff to indicate that he purported or intended to convey any right, title or interest in the property in question other than that he had received from the County by tax deed. There is no evidence in the record that the grantee paid for such quitclaim deed any amount other than the recited consideration. In this state of the record, in order to sustain appellant's contention, we would in effect, whatever the dialectics employed to reach the result, convert a quitclaim deed into a conveyance which at least purports to convey a fee simple title absolute.

In the case of *Duncan* v. *Hemmelwright,* 112 Utah 262, 186 P. 2d 965, 968, Carbon County, after default by the record owner in the payment of taxes, conveyed its title by quitclaim to the plaintiff. Subsequent thereto it acquired from the trustee in bankruptcy of the defaulting tax-debtor owner a deed to the property in question. Thereafter, the county quitclaimed such property to defendant's predecessor in interest. The successor in interest of the tax title purchaser brought suit to quiet title. Defendant counterclaimed asserting title in itself. The lower court quieted title in the defendant. We affirmed. In the course of the opinion, we stated:

"Plaintiff next contends that the answer shows title to the land in plaintiff by operation of the doctrine of after-acquired title. It is plaintiff's contention that if the county acquired any interest in the land in question under the bankruptcy proceedings, such after-acquired title passed immediately to the plaintiff. The contention also is without merit. The deed from the county to plaintiff was a quitclaim deed. A quitclaim deed does not convey an after-acquired title. 7 Thompson on Real Property, Permanent Ed., Secs. 3845, 3846, pp. 310-312; 4 Tiffany Real Property, 3d Ed., Sec. 1231, p. 642. Under

78-1-12, U. C. A. 1943, a quitclaim deed operates to convey the estate of the grantor 'at the date of such conveyance.' The doctrine of after-acquired title is clearly not applicable to the facts of this case."

. This doctrine is universally recognized. See annotation 26, 58 A. L. R. 360. Therein the annotator states:

"* * * if the conveyance is merely by quitclaim deed, and there are no covenants or recitals showing an intention to convey any definite interest or estate, the grantor is not thereby estopped from asserting an after acquired title or interest."

Plaintiff then would not be here estopped by deed. Nor as shown above, would he be estopped by any representation or promise he had made in connection with the execution of the quitclaim. The doctrine of "clean hands" is, in my opinion, inapplicable. That doctrine supposes the hands of the party seeking equity to be polluted by some inequitable or unconscionable conduct upon his part. As stated hereinabove, the only things the records show that the plaintiff did was (1) he purchased a tax title from the county; (2) he conveyed such a title by quitclaim to defendant's grantor; and (3) some years later he purchased the outstanding title of the tax debtor owner. As I understand the contention of appellant, he thereby soiled his hands so as to preclude obtaining the aid of the court of equity in quieting title in him as against the successor in interest of the tax title purchaser. If the mere fact that the quitclaim grantor subsequent to his conveyance acquired good title to the premises is unconscionable, then in practical effect we say that a quitclaim deed carries after-acquired title. At least the after-acquired title is subject to an outstanding title of record which cannot be adjudicated to be invalid.

HENRIOD, Justice.

I concur reluctantly. Plaintiff obtained the property by tax deed at a time when values were low. The consideration therefor was relatively small. He quitclaimed to Doris Trust, apparently for a substantial consideration. Years

later, but a comparatively short time before defendants' interest would have ripened into unimpeachable title by adverse possession,—when values had trebled or quadrupled, plaintiff purchased the title of the record owners for a paltry sum, sued to quiet title against defendants, and attacked the very title which he formerly had, and sold. He did not offer even to disgorge the amount of his unjust enrichment.

The writer believes such conduct smacks of unconscionability,—to the point where the trial court well might have refused to entertain jurisdiction on simple, elementary principles calling for application of the clean hands doctrine.

CROCKETT, Justice.

I dissent.

At the outset I concede: that the rule of caveat emptor applies to a purchaser taking a tax title; that a quitclaim deed carries no warranty of title, special or otherwise; that it does not convey to the grantee the benefit of any after-acquired title which may come into the hands of the grantor; and further that facts are not present here which would make out the elements of an equitable estoppel against the plaintiff. See 19 Am. Jur. 642; 31 C. J. S., Estoppel, § 66, p. 254.

Notwithstanding the foregoing, I think that under the facts of this case the plaintiff is not entitled to have a court of equity quiet title to the property in him. The facts are accurately set out in the main opinion and in the concurring opinion of Mr. Justice HENRIOD. Plaintiff bought the tax title, and sold it for a substantial consideration to defendant's predecessor; stood by while they paid the taxes, general and special for four years; then went out and purchased the legal title from the wife and daughter of Pittorf, the former owner. They had not paid any attention to the property nor paid any taxes upon it for twenty years. It

is plain to be seen that the plaintiff actively sought and procured the legal title from them for a nominal consideration for the express purpose of undermining the title he sold to defendant.

The prevailing opinion would permit plaintiff to retain the purchase price he received for the land and to get the land back, which is exactly what was condemned by the Supreme Court of Missouri in the case of *Clyburn* v. *McLaughlin* cited in the main opinion. Such conduct, as I see it, does not square with honesty and fair dealing, and a court of equity should not reward plaintiff by affording him the remedy of quieting title in him. I am at a loss to understand how in justice and equity this court can permit it to be done.

No maxim of equity is older or more venerated than "He who seeks redress in a court of equity must come with clean hands." The very foundation of equity is good conscience, and any conduct in connection with the matter in controversy which does not comport with good conscience should preclude any relief being granted to plaintiff. This doctrine is aptly stated in 2 Pomeroy's Eq. Jur. 143 (5th Ed.) :

"A court of equity acts only when and as conscience commands; and if the conduct of the plaintiff be offensive to the dictates of natural justice, then whatever may be the right he possesses, and whatever use he may make of them in a court of law, he will he held remediless in a court of equity. Misconduct which will bar relief in a court of equity need not necessarily be of such nature as to be punishable as crime or to constitute the basis of legal action. Under this maxim, any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair-minded men, will be sufficient to make the hands of the applicant unclean" citing numerous authorities.

A case which well illustrates this point is *Weegham* v. *Killefer*, D. C., 215 F. 168, 170, affirmed 215 F. 289. Defendant Killefer had played baseball for the 1913 season with Philadelphia. His contract provided that upon terms later to be agreed upon he would play for Philadelphia the

next season. Killefer signed a contract with the plaintiff Weegham to play for Chicago for the next three seasons at an increased salary. Philadelphia then engaged him at a still higher salary for the next three seasons. Weegham sought to enjoin Killefer from playing with Philadelphia because of the prior binding contract to play for Chicago.

The court recited that the contract with Chicago was valid and would ordinarily be enforceable; that furthermore the provision in the Philadelphia contract was not binding as to the future but was "nothing more than a contract to enter into a contract, in the future, if the parties can then agree to contract" and that it also lacked mutuality. Nevertheless, the court invoked the "clean hands" principle stating:

"Measuring and testing their [plaintiffs'] conduct by this rule, are the plaintiffs in court with clean hands? Knowing that the defendant, Killefer, was under a moral, if not a legal, obligation to furnish his services to the Philadelphia Club for the season of 1914, * * * by offering him a longer term of employment and a much larger compensation induced him to repudiate his obligation to his employer."

The court pointed out that the injunction would be denied, not because the executory part of the 1913 contract with Philadelphia was of any legal force or effect, and not because there was any defect in the contract between plaintiffs and Killefer, nor yet because there were any equities in Killefer's favor, but because the actions of the plaintiffs in procuring the contract did not square with good conscience and fair dealing.

Similarly in *Heylandt Sales Company* v. *Welding Gas Products Company*, 180 Tenn. 437, 175 S. W. 2d 557, complainant sued to cancel an issue to individual defendants of shares of stock in defendant corporation, charging that he had been denied participation in this new issue, in violation of rights reserved to him by the by-laws and by statute. Defendants admitted this but charged that the complainant

had violated agreements theretofore made with the defendants that he would not acquire a majority of stock and secure control. The Court of Appeals held and the Supreme Court affirmed the holding that because, contrary to his promise, he had thus unfairly acquired control of the corporation, he could not maintain, in a court of equity, his legal right to have the stock issued to him. The holding was based squarely on the "clean hands" doctrine. In the case of *Larkin* v. *Bank of America, etc.,* 93 Cal. App. 2d 594, 209 P. 2d 801, the court affirmed refusal to permit the defendant to set aside tax deeds through which plaintiff claimed certain property because it said that defendant's own conduct had resulted in the tax proceedings against the property, and further, the defendant had remained inactive when good conscience and good faith would have required action pertaining to the property.

No useful purpose would be served by continuing to delineate herein other cases of this character. There is no dearth of them. See 2 Pomeroy's Eq. Jur. 143 (5th Ed.) ; 4 A. L. R. 44; 21 C. J. 184; 30 C. J. S., Equity, § 95, p. 481 and many cases there referred to in those texts. The latter states:

"It is not alone fraud or illegality which will prevent a suitor from entering a court of equity. Any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair-minded men will be sufficient to make the hands of applicant unclean"

so as to preclude his being aided by a court of equity.

Perusal of the authorities renders it abundantly clear that one who was resorted to bad faith or unfairness will appeal in vain to a court of conscience, even though he may have kept himself within the letter of the law. If this conduct of the plaintiff Dowse squares up with "honesty and fair dealing", then I suppose my sense of justice must be a bit warped in this area. Likewise, I confess my inability to see how the holding I advocate would set any

dangerous precedent or distort the well established rules conceded at the beginning of this opinion. I simply believe that good conscience requires that under the particular facts of this case, where plaintiff sold the title and conveyed his interest in the property for a substantial consideration, which he retains, he should thereafter be precluded from active connivance to defeat the title he has so sold in order to recapture the property for himself; and that a court of equity will not aid him in attempting to do so.

With due deference to the consideration which I know my brethren of the court have given this case, and their judgment concerning it, I dissent from their view, believing that the case should be reversed.

WADE, J., concurs in dissenting opinion of CROCKETT, J.